Bernice P. GOODRICH, Appellant,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO.

No. 82–2386.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 26, 1983.

Decided July 29, 1983.

Richard J. Hirn, Washington, D.C., for appellant.

Elihu I. Leifer, Washington, D.C., for appellee.

Before GINSBURG and SCALIA, Circuit Judges, and VAN PELT,* Senior District Judge for Nebraska.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Appellant Bernice P. Goodrich brought this civil action against her employer, the International Brotherhood of Electrical Workers ("IBEW"), pursuant to the Equal Pay Act of 1963.[1] The Act targets

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The Act, an amendment to § 6(d) of the Fair Labor Standards Act of 1938, provides in relevant part:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and

an "endemic problem of employment discrimination"; it is a "broadly remedial" statute, which firmly establishes as federal law the "principle of equal pay for equal work regardless of sex." *Corning Glass Works v. Brennan,* 417 U.S. 188, 190, 195, 208, 94 S.Ct. 2223, 2228, 2234, 41 L.Ed.2d 1 (1974).[2] Goodrich alleged that she performs the same work as a number of male IBEW employees, but is paid substantially less.

The IBEW sought summary judgment on two grounds. First, it asserted that Goodrich and the male employees in question did not perform "equal work." Second, it relied on the Act's awkwardly-phrased fourth affirmative defense: the wage disparity at issue, the IBEW urged, was "based on any other factor other than sex." 29 U.S.C. § 206(d)(1)(iv) (1976). The district court found that genuine issues of material fact precluded summary adjudication of the "unequal work" defense, but held that the IBEW was entitled to judgment, as a matter of law, on its "other factor other than sex" plea.

Our review indicates that the district court applied the Act's residuary affirmative defense incautiously and disposed of the case precipitously. As explained by the IBEW, both the unequal work plea and the residuary defense ultimately rested on the same contentions—that the men with whom Goodrich compared herself were on call to perform additional duties and had special expertise augmenting the value of their services to the union. The district court correctly ruled that the IBEW's "additional duties" and "special expertise" contentions entailed disputed matters of fact relevant to a determination whether Goodrich and her male co-workers were engaged in equal work. When the same contentions reappeared in explanation of the IBEW's "other factor other than sex defense," however, the district court viewed them differently and granted summary judgment. We conclude that the "additional duties" and "special expertise" contentions present triable issues. We therefore reverse the judgment entered summarily for the IBEW, and remand the case for further proceedings.

responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.
29 U.S.C. § 206(d)(1) (1976).

2. Both the Equal Pay Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 (1976), provide remedies for sex discrimination in the workplace. While the Equal Pay Act addresses only wage disparities between employees performing "equal work," the prohibitions of Title VII are much broader, making it unlawful:

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...; or

to limit, segregate, or classify ... employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an

employee, because of such individual's ... sex. . . .

*Id.* § 2000e–2(a)(1), (2). In contrast to Equal Pay Act cases, Title VII wage discrimination claims are not limited to situations involving "equal work." *See County of Washington v. Gunther,* 452 U.S. 161, 168, 101 S.Ct. 2242, 2247, 68 L.Ed.2d 751 (1981); *International Union of Electrical, Radio & Machine Workers v. Westinghouse Elec. Corp.,* 631 F.2d 1094, 1099 (3d Cir.1980), *cert. denied,* 452 U.S. 967, 101 S.Ct. 3121, 3122, 69 L.Ed.2d 980 (1981). A plaintiff may be awarded monetary relief under both statutes provided that each is satisfied and the plaintiff does not recover for the same wrong under both provisions. *See Thompson v. Sawyer,* 678 F.2d 257, 263 (D.C.Cir.1982).

In addition to the scope of their prohibitions, the two statutes differ in other respects that may influence a plaintiff's choice of remedy. For example, the Equal Pay Act, unlike Title VII, "has no requirement of filing administrative complaints and awaiting administrative conciliation efforts." *County of Washington v. Gunther, supra,* 452 U.S. at 175 n. 14, 101 S.Ct. at 2250 n. 14; *see Ososky v. Wick,* 704 F.2d 1264, 1266 (D.C.Cir.1983) (district court does not have discretion to require exhaustion of administrative remedies in individual Equal Pay Act cases).

## I. BACKGROUND

Bernice Goodrich has been employed at the IBEW's headquarters in Washington, D.C. since 1952; she is not, however, a union member. In 1961, she began work at her present position as an "agreement analyst" in the agreement approval department. The primary function of the department is to review labor agreements that local unions submit to the International President for his approval.

The department is headed by a director, who is male, and has a professional staff of six employees, five males and Goodrich. Of the six staff members, only Goodrich is classified as an agreement analyst. The five male employees hold the position of either "International Representative" or "Senior International Representative." The two "International Representative" classifications carry a large financial advantage. Although Goodrich has considerably more experience in reviewing labor agreements than any of her male colleagues,[3] she receives substantially less pay.[4]

International Representative status at the IBEW's headquarters is entirely dependent upon active membership in the union. All professional employees at the union's headquarters who have been active members of an IBEW local hold the International Representative title. And only active union members, pursuant to the IBEW "membership rule," are eligible for designation as International Representatives. The agreement approval department is one among many areas of the union's professional operations in which International Representatives work. Regardless of the particular jobs they hold, International Representatives receive a uniform annual salary based on their seniority in the union. These salaries are generally much higher than those paid to professional employees who are not union members. Thus, despite Goodrich's extensive experience in the agreement analysis department, she is paid less than her male co-workers because she has never been a union member and is therefore ineligible to be an International Representative.

In December 1981, Goodrich commenced this action claiming that the disparity between her pay and that of her male co-workers violated the Equal Pay Act. To establish a prima facie case under the Act, a plaintiff must show that an employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1) (1976); *see Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (legislative history clarifies that plaintiff must make these threshold showings). Once a plaintiff has carried this initial burden, a defendant may escape liability either by refuting any part of the prima facie case, or by pleading and proving one of the Act's four affirmative defenses. These defenses permit payment of different wages if "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on

**3.** At the time of this suit, Goodrich had approximately 21 years of experience in reviewing labor agreements (1961–1982). By contrast, no male International Representative in the department had more than eight years of experience in agreement analysis work: John Dalton (1974–1982); Richard Willaert (1977–1982); William Shank (1979–1982); Robert Damiani (1977–1980, 1982); and Stan Hubbard (1981–1982). Record Excerpts (R.E.) 26.

**4.** From 1979 to 1982, for example, Goodrich received annual salaries of $24,494 (1979), $26,795 (1980), $30,030 (1981), and $31,189 (1982). R.E. 22. During that same period of time, the male International Representatives in the agreement approval department generally received much higher salaries: John Dalton—$44,000 (1979–1982); William Shank—$44,000 (1979–1982); Jack Joyce—$36,400 (1979–1980), $44,000 (1981–1982); Richard Willaert—$36,400 (September 1979-August 1981), $44,000 (September 1981–1982); Robert Damiani—$36,400 (January 1979-May 1979), $44,000 (June 1979–1982); and Stan Hubbard—$24,700 (November 1981–1982). R.E. 21–22. Hubbard, the only male to earn less than Goodrich, did not begin work at the IBEW's headquarters until May 1981.

any other factor other than sex." 29 U.S.C. § 206(d)(1) (1976).[5]

In her complaint, Goodrich alleged the necessary elements of a prima facie violation of the Act. The parties then stipulated, *inter alia,* that: (1) the work performed by Goodrich is equal to the work of the five male International Representatives "at such times as such Representatives are assigned to and physically performing work in the Agreement Approval Department"; (2) the IBEW has always required active union membership as a prerequisite to International Representative status; and (3) the "membership rule" has been applied equally and without exception to male and female IBEW employees. Record Excerpts (R.E.) 14–15.

■ The IBEW initially challenged Goodrich's prima facie case by arguing that the work she performed was not equal, within the meaning of the Act, to the work International Representatives performed. The Equal Pay Act standard is neither "comparable" work nor "identical" work. Instead, the test under the Act is "substantial equality"—whether the jobs in question are substantially related and substantially similar in skill, effort, responsibility, and working conditions. *See Thompson v. Sawyer,* 678 F.2d 257, 274 (D.C.Cir.1982); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 449 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). According to the IBEW, the work in this case was unequal for two reasons: International Representatives perform additional duties beyond those required for the particular jobs they currently hold, and they have special expertise relevant to their duties.[6] Goodrich contested these claims; she asserted that the additional work was trivial, frequently nothing more than attending social functions, and that the alleged special expertise had no relationship to the work performed at headquarters.[7] The district court concluded that the parties' conflicting allegations concerning the "substantial equality" of the work performed by Goodrich and males in the agreement approval department presented material issues of fact that were not appropriate for resolution by summary judgment. Memorandum Opinion (Mem. Op.) at 3, R.E. 8.

As a second defense, the IBEW asserted that any wage disparity rested upon a bona fide factor other than sex—the fourth affirmative defense under the Act. The union identified its membership rule, which precludes Goodrich from becoming an International Representative, as the requisite neutral factor. Significantly, however, the IBEW did not assert that the additional pay International Representatives received was principally a bonus in recognition of important service rendered to locals in past years. Instead, the union claimed that the membership rule served to assure that Interna-

5. The "Bennett Amendment," 42 U.S.C. § 2000e–2(h) (1976), incorporates these four affirmative defenses into Title VII for sex-based wage discrimination claims. *See County of Washington v. Gunther,* 452 U.S. 161, 168, 101 S.Ct. 2242, 2247, 68 L.Ed.2d 751 (1981). Thus, a wage differential does not violate Title VII if it fits within one of the Equal Pay Act defenses.

6. The IBEW asserted that International Representatives have no written job description and may be assigned to different union positions at different times during their tenure. *See* R.E. 30–31, 39, 52. International Representatives, including those assigned to the agreement approval department, the IBEW added, are on call "on any day of the week, at any time of the day," to perform duties above and beyond those required for their particular position. R.E. 41; *see* R.E. 31, 33, 40, 44. The union also maintained that an International Representa-

tive's experience with local union matters is relevant to work in all IBEW departments. *See* R.E. 31, 34.

7. Goodrich questioned whether International Representatives in the agreement approval department really do perform additional duties or have any special expertise. For example, in support of its claim of additional duties, the union had pointed out that, unlike Goodrich, International Representatives assigned to the agreement approval department are required to attend the annual IBEW construction conference and the annual AFL–CIO legislative conference. Goodrich, however, claimed that International Representatives attending such conferences "perform no work there at all." Rather, they receive time off from their agreement analysis work to attend, while Goodrich must remain at IBEW headquarters and continue to work. Goodrich Affidavit ¶ 5.

tional Representatives would have the special expertise required for the additional duties they perform. Goodrich repeated in this context what she had said in relation to the "unequal work" defense. She contended that the membership rule in fact does not serve the alleged purpose because special expertise in local union problems is not needed in the jobs her co-workers hold and the extra duties, to the extent they exist, are insubstantial.

The district court believed the stipulation that the membership rule is applied equally to men and women doomed "any attempt [by Goodrich] to draw [the IBEW's] affirmative defense into question." Mem. Op. at 4, R.E. 9. The IBEW, according to the district court, had "carefully and extensively explained its position that the union membership rule is a bona fide rule that serves a valuable business purpose." *Id.* at 6, R.E. 11. Despite Goodrich's argument that the expertise relevant to job performance and additional work claims lacked solid evidentiary support, so that the alleged "valuable business purpose" had not been established as a matter of law, the district court remarked that Goodrich "made no attempt to rebut defendant's justification for the IBEW membership rule." *Id.* On this reasoning, the district court granted the IBEW's motion for summary judgment.

## II. DECISION

In essence, the district court held that "additional duties" and "special expertise" contentions can do double duty. If proved, they can defeat a claim that the employees in question are engaged in equal work. But they can serve as well to establish that a

rule not framed in terms of sex, such as the IBEW membership rule, is bona fide. However, under the district court's view of this case, "additional duties" and "special expertise," when pressed into service in this latter fashion, can carry the day for the employer if the contentions are merely alleged; under the residuary, fourth affirmative defense, the contentions need not be proved.

■ We believe this view of the breadth of the residuary defense would substantially undermine the equal pay principle advanced by the Act. "Additional duties" and "special expertise" contentions, we hold, do not establish that a rule or criterion is bona fide when those contentions merely restate "unequal work" assertions which involve genuine issues of fact.

Case law, citing the Equal Pay Act's legislative history, establishes that the residuary affirmative defense applies only when "pay differentials are based on a *bona fide* use of 'other factors other than sex.'" *County of Washington v. Gunther,* 452 U.S. 161, 170, 101 S.Ct. 2242, 2248, 68 L.Ed.2d 751 (1981) (emphasis added).[8] The IBEW here relied on its "additional duties" and "special expertise" explanation to justify as bona fide use of the membership rule to establish pay differentials that, in Goodrich's case and perhaps generally, separated women from men.[9] We do not determine whether a different rationale for the higher pay awarded International Representatives would have been subject to trial. *See supra* pp. 1492–1493. We hold only that when "additional duties" and "special expertise" are the factors ultimately relied upon,[10] the residuary defense[11] will not serve to avoid

---

**8.** *See Corning Glass Works v. Brennan, supra,* 417 U.S. at 201, 94 S.Ct. at 2231; H.R.Rep. No. 309, 88th Cong., 1st Sess. 3, *reprinted in* 1963 U.S.Code Cong. & Ad.News 687, 689; S.Rep. No. 176, 88th Cong., 1st Sess. 4 (1963); 109 Cong.Rec. 9196 (1963) (remarks of Rep. Frelinghuysen); *id.* at 9209 (remarks of Rep. Goodell).

**9.** Goodrich pointed out that women make up 30% of the IBEW membership, but account for less than 3% of the International Representatives. Goodrich Affidavit ¶ 4 (of the 242 Inter-

national Representatives, only seven are women).

**10.** We leave open the question whether the IBEW can sustain its "additional duties" and "special expertise" contentions by proof regarding the professional staff at headquarters generally, or whether the contentions must be established separately for each department.

**11.** In general, courts have recognized that the residuary defense is not designed to provide a convenient escape from the Act's basic command. *See EEOC v. Central Kansas Medical*

the trial that would be required to test whether the alleged extra duties and expertise exist and mark the work in question as unequal.

In the further proceedings our remand requires, we caution the district court against overreading the parties' stipulation. That court commented: "Although [Goodrich] may not have foreseen the legal effect of her stipulation, it forecloses [her] from contending that the IBEW membership requirement constitutes sex-based wage discrimination." Mem. Op. at 4–5, R.E. 10–11. Fairly construed, the stipulation simply acknowledged that the IBEW has consistently adhered to the membership rule, that the rule is longstanding, and that it bars males who lack union membership, as it bars females who are not union members, from achieving International Representative status.

■ A concession as to the length of time a rule has remained in place and the employer's consistency in adhering to it is not a concession that the rule insulates the employer from Equal Pay Act liability. *See Thompson v. Sawyer, supra,* 678 F.2d at 277

("longstanding" binding industry practices are not bona fide factors other than sex because they constitute a "continuing structure of sexual discrimination"). Nor is a plaintiff barred from contesting the genuineness of the reasons an employer proffers for a rule (here, to provide compensation for additional duties and special expertise) because the rule itself does not invoke a sex criterion or because the plaintiff has not attempted to bring herself within the rule. *See Corning Glass Works v. Brennan, supra,* 417 U.S. at 203–05, 209–10, 94 S.Ct. at 2232–33, 2235; *Thompson v. Sawyer, supra,* 678 F.2d at 276–77, aff'g *in relevant part Thompson v. Boyle,* 499 F.Supp. 1147, 1158–59, 1166 (D.D.C.1979).[12]

■ Under the familiar standard leading us to remand this case, a party seeking summary judgment must demonstrate that there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c). In determining whether a genuine issue exists, the trial court must accord the party opposing the motion the benefit of all reasonable

*Center,* 705 F.2d 1270, 1272 (10th Cir.1983); *EEOC v. Whitin Machine Works, Inc.,* 635 F.2d 1095, 1098 (4th Cir.1980); *Brennan v. Owensboro-Daviess County Hosp.,* 523 F.2d 1013, 1031 (6th Cir.1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796 (1976).

**12.** The rule that an employee need not have Title VII-type standing to attack an employer's purportedly gender-neutral pay criterion has not been the subject of much judicial discussion. Nevertheless, we find the point implicit in Equal Pay Act precedent that guides our decision. In *Corning Glass Works v. Brennan,* for example, Corning, from 1944 to 1966, paid male night-shift inspectors more than it paid female dayshift inspectors; the pay differential was inaugurated at a time when state law prohibited women from working at night. The Supreme Court found that the night and day inspectors were engaged in "equal work," and rejected Corning's affirmative defense that the shift differential was a "factor other than sex" justifying the disparate wages. 417 U.S. at 203–05, 94 S.Ct. at 2232–33.

In 1966, Corning opened the night shift to female employees, but retained the higher wage for night inspectors. *Id.* at 205, 94 S.Ct. at 2233. Some female inspectors applied for the higher-paying night positions (not all were ac-

cepted), but many did not even apply. *See Hodgson v. Corning Glass Works,* 474 F.2d 226, 230 (2d Cir.1973), aff'd sub nom. *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Brennan v. Corning Glass Works,* 480 F.2d 1254, 1257 (3d Cir.1973), *rev'd,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). Thus, while some women enjoyed the higher night salary after 1966, all of the day inspectors remained at the lower salary level. The Court held that this post-1966 disparity between night and day wages perpetuated the 1944–1966 wage differential made illegal by the Equal Pay Act, and therefore affirmed the lower court decision awarding back pay to female day inspectors from 1966 to the time of suit. 417 U.S. at 209–10, 94 S.Ct. at 2235.

None of the female day-shift inspectors who failed to apply for the night-shift positions had Title VII-type standing to challenge women's limited access to night shift work. Yet they prevailed on their Equal Pay claim even though they, like Goodrich, had not sought entry into the higher-paying job classification. And in *Thompson v. Sawyer,* female bindery workers successfully argued that a four-year apprenticeship program was not a bona fide "factor other than sex"; successful plaintiffs included women who had not applied for admission into the program or higher-paying job classification.

doubts, and construe matters presented in connection with the motion most favorably to the motion's opponent. *See, e.g., McSurely v. McClellan,* 697 F.2d 309, 321 (D.C.Cir.1982) (per curiam); *Abraham v. Graphic Arts International Union,* 660 F.2d 811, 814 (D.C.Cir.1981).[13]

■ Viewing the record before us in the light most favorable to Goodrich, and bearing in mind that reasonable doubts must be resolved against the IBEW, we are persuaded that the union has not sustained its summary judgment burden. Goodrich has raised factual issues relevant to determining whether the IBEW has paid her less than it pays employees of the opposite sex engaged in substantially equal work. She has called into question the genuineness of the IBEW's claims that her male co-workers merit higher pay because, as International Representatives, they perform additional duties and have relevant special expertise. To defeat summary judgment for the union, Goodrich was required to do no more.

CONCLUSION

For the reasons stated, we reverse the judgment from which this appeal has been taken and remand the case to the district court for further proceedings consistent with this opinion.

*It is so ordered.*

---

**13.** These principles apply with equal force at the appellate level. Like the district court, we read the record in the light most favorable to the party opposing summary judgment. *See Poller v. CBS,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *McSurely v. McClellan, supra,* 697 F.2d at 321; *Abraham v. Graphic Arts Int'l Union, supra,* 660 F.2d at 815 & n. 29.