Ms. Cecilia CODY, Plaintiff,

v.

PRIVATE AGENCIES COLLAB-
ORATING TOGETHER,
INC., Defendant.

Civil A. No. 94–2706 (CRR/PJA).

United States District Court,
District of Columbia.

Dec. 1, 1995.

Abbey G. Hairston, Silver Springs, MD, for Plaintiff.

David Schroeder, Washington, DC, for Defendant.

### MEMORANDUM OPINION

ATTRIDGE, United States Magistrate Judge.

Pending before the Court are 5 post judgment motions. Two involve cross motions for attorney fees, another concerns taxation of costs, and the remaining two seek to change the judgment itself. The plaintiff urges that the judgment be amended to provide for liquidated damages and prejudgment interest; whereas, the defendant urges that the judgment in favor of the plaintiff on the Equal Pay Act be set aside and judgment entered in its favor as a matter of law.

### Background

The plaintiff, Cecilia Cody, a former employee of the defendant Private Agencies Collaborating Together, Inc. (PACT), sued the defendant alleging sexual discrimination in employment in violation of Title VII, pay discrimination because of her sex in violation of the Equal Pay Act, defamation, breach of contract and intentional interference with business prospects.

Cody was first employed by PACT in May of 1991, as a part-time consultant. In October 1991, she became a full-time employee with the title of Associate Director for Latin America, at an annual salary of $31,500.

On November 1, 1992, Cody was given a title change to Regional Director for Latin America and received a salary increase to $35,500. On January 1, 1993, a cost of living increase raised her salary to $36,678.72.

On or about November 1, 1990, David Williams, a male colleague, was hired by PACT as Associate Director for Africa at an annual salary of $36,000. On February 1, 1991, a cost of living adjustment raised his salary to $37,500. On October 1, 1991, Williams was named interim Regional Director for Africa at an annual salary of $40,000, and on December 1, 1992, he became the Regional Director for Africa with an annual salary of $45,000.

Following a cost of living adjustment, his salary was raised to $46,492.80, effective January 1, 1993. Following a merit increase on November 1, 1993, his salary was $51,142.08 and, effective January 1, 1994, a cost of living adjustment raised his salary to $52,414.54.

Following her termination by PACT in June, 1994, Cody brought suit against PACT charging violations of Title VII, The Equal Pay Act, breach of contract, defamation, and intentional interference with business prospects. At the conclusion of the plaintiff's case, the defendant's motion for judgment as a matter of law was granted as to the retaliation claim under Title VII, breach of contract and intentional interference with business prospects counts.[1] The motion was taken under advisement as to the Title VII discriminatory discharge and Equal Pay Act claims. The jury returned a verdict for the defendant on the Title VII claim and found in favor of the plaintiff on the Equal Pay Act claim awarding her damages of $9,928.92.

The defendant has renewed its motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), and the plaintiff has moved pursuant to 29 U.S.C. § 216(b) to amend or alter the judgment to include liqui-

---

1. The defamation count had been voluntarily dismissed prior to trial.

dated damages in an amount equal to that awarded her by the jury and for prejudgment interest.[2]

## A. Defendant's Judgment as a Matter of Law

■ The Equal Pay Act is a broadly remedial statute created to correct an endemic problem of employment discrimination. *Goodrich v. International Brotherhood of Electrical Workers, AFL–CIO,* 712 F.2d 1488, 1490 (D.C.Cir.1983). "An employer violates the [act] by paying unequal wages for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions.'" *Thompson v. Sawyer,* 678 F.2d 257, 270 (D.C.Cir.1982) (quoting 29 U.S.C. § 206(d)(1) (1976)).

■ The defendant initially challenges the plaintiff's *prima facie* case and argues that she failed to prove that her job and that of David Williams were "equal." The defendant correctly points out that the standard "equal" does not mean "comparable" or "identical" work. "Instead, the test under the Act is 'substantial equality'—[that is] whether the jobs in question are substantially related and substantially similar in skill, effort, responsibility, and working conditions." *Goodrich,* 712 F.2d at 1492 (citations omitted).

PACT concedes that if Cody met her burden, then, and in that event, "PACT could (only) prevail ... by rebutting the showing of equality of jobs and/or asserting one of the affirmative defenses available under the Act, including that any wage differential was based on any fact other than sex." (Renewed motion for Judgment as a Matter of Law at 3 (Jan. 28, 1995)).

PACT argues that it produced uncontroverted and unrebutted evidence that the wage differential between Cody and Williams was based on factors other than sex; more specifically, experience, skill, judgment, responsibility and supervision.

The evidence before the jury viewed in the light most favorable to the plaintiff shows that Williams' full-time employment with PACT as an associate director began on November 1, 1990, at a salary of $36,000; and on the other hand, Cody started with the same title on October 1, 1991, at a salary of $31,500. A year later, on November 1, 1992, Cody was given a $4,000 raise and a month after that, Williams was given a $5,000 raise. On January 1, 1993, both were given a cost of living adjustment which brought Cody's annual salary to $36,678.72 and Williams' annual salary to $46,492,80. Therefore, not only was Cody's starting salary $4,500 less than Williams' starting salary but a little over a year after she began her employment, she was earning almost $10,000 a year less than Williams.

Although PACT's Personnel Manual, (Pl.'s Exhibit 6—which according to Williams was not in effect when he was hired) leaves it to the sole discretion of the chief executive officer (CEO) to determine the salaries of all employees. The factors he is to consider are all very subjective.

The very nature of the jobs themselves, which were professional and result oriented rather than ministerial, raised genuine issues of material fact as to whether both exercised the same skill and judgment in carrying out their responsibilities. Indeed, factual issues relevant to whether their responsibilities were equal, either in the global context or specific context, were also present, particularly since both jobs had as their ultimate end the marketing of PACT's services.

The jury found that both Cody and Williams performed substantially equal work. That determination was fact specific. Moreover, the threshold defense of unequal work was so factually intertwined with and rested on the same contentions as the defendant's affirmative or residuary defense, that factors other than Cody's gender accounted for the salary differential, so as to preclude the entry of judgment in favor of the defendant as matter of law. *Goodrich,* 712 F.2d. at 1490.

---

2. The plaintiff has also moved for post judgment interest. However, any money judgment entered in a civil action between private parties includes interest as part of the judgment. The rate of interest is determined by statutory formula. *See* 28 U.S.C. § 1961 and *Saglimbene v. Venture Industries Corp.,* 739 F.Supp. 1100 (E.D.Mich. 1990).

### B. Plaintiff's Motion for Liquidated Damages and Prejudgment Interest

■ "An employer who violates the Equal Pay Act is subject to the remedial provisions of the Equal Pay Act's statutory parent, the FLSA [Fair Labor Standards Act]. For relief purposes, the FLSA does not distinguish between wages that were sexually discriminatory and wages that were deficient for other reasons...." *Thompson v. Sawyer,* 678 F.2d at 278.

■ However, "[i]f the employer convinces the court that he paid the deficient compensation in good faith and had reasonable grounds for believing he was in compliance with the FLSA, the court has discretion to forego any or all of the allowable award of liquidated damages." *Id.* (citation omitted). Moreover, liquidated damages are considered compensatory in nature and not penal. Therefore, courts have the flexibility to deny liquidated damages when such an award would be unfair to the employer. *Id.*

In this case, the jury found PACT did not discriminate against Cody because of her gender even though it paid her wages unequal in amount from that of a fellow employee for work that required equal skill, effort and responsibility and performed under similar working conditions. Mitchell testified why he paid Cody a starting salary less than that of Williams and why her raises were more modest than those of Williams. He also testified that initially he had difficulty in determining Cody's base salary at her previous employment because it included allowance for housing and a car as well as other benefits; whereas, Williams' previous employment base salary contained no such perquisites. In addition he found her management experience was practically nil. On the other hand, Williams had seven years of experience with an organization known as IBS. Moreover, Cody's experience with one of her previous employer's was discounted because it only lasted a couple of months. And while her experience with another employer was interesting, it was more in the nature of volunteer work and not otherwise

overriding. Furthermore, her work with yet another employer was social service oriented and not related to the type of work that PACT did. Nor was Cody's educational background exemplary. While she had traveled a great deal and lived in a number of countries, she only had an undergraduate degree.

In contrast to both Williams and Cody, Mitchell testified that one of the other female project directors had a masters degree in business administration as well as 7 years experience with an organization comparable to PACT where she served as a manager. And yet another female project director had 2 masters degrees as well as a specialty in debt swap, an area in which PACT was extremely interested and in which it had no expertise. Therefore, PACT paid both of these female directors more than Williams to whom Cody compared herself.

■ I am satisfied based on this evidence that PACT has carried its burden of establishing that it had reasonable grounds to believe that the manner in which it set Cody's salary was not in violation of the law and that it acted in a good faith belief that the salary paid Cody, although unequal, was fair and reasonable based on her prior work history, education, skill and experience. Therefore, in the exercise of its discretion, the Court declines to award liquidated damages. *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 466 (D.C.Cir.1976).

■ However, in compliance with the compensatory nature of the Equal Pay Act, Cody should receive the full value of the pay of which she was deprived. Therefore, the Court concludes that the plaintiff is entitled to an award of prejudgment interest at the applicable statutory rate from October 1, 1991, the date of the commencement of her employment.[3]

### C. Taxation of Costs

The plaintiff has filed a bill of costs seeking to tax against the defendant 8 separate categories of expenses she contends she in-

---

3. As indicated in footnote 1, post judgment interest is included as part of the judgment already

entered in this civil action between private parties.

curred by reason of this litigation. The defendant concedes that the plaintiff is entitled to the taxation of the filing fee she incurred but opposes the taxation of the remaining 7 items.

By far the largest of the 7 disputed items is the sum of $2,578.60 for deposition transcripts. Local Rule 214(d)(6) allows the recovery of costs for deposition transcripts only if the deposition was actually used in the case, either at a hearing or trial.

The plaintiff did not use any deposition transcript either at trial or at any hearing before the court. Therefore, the court shall sustain the objection to the taxation of this cost against the defendant.

The next disputed item of cost concerns a claim for $500.85 for duplicating and copying papers used at trial. The defendant argues, while Local Rule 214(d)(8) provides for the recovery of costs of copying exhibits introduced in evidence, used for impeachment or filed with the clerk, the plaintiff has failed to identify costs associated with the copying of any exhibit used in connection with the Equal Pay Act—the only claim on which she prevailed. The Court agrees. Nevertheless, subpart (9) of Local Rule 214(d) allows the taxation of other costs of copying up to $300.00. Accordingly, the court will tax against the defendant copying costs in the sum of $300.00.

The plaintiff also seeks taxation for costs associated with facsimile transmission, postage, messenger, Federal Express, long distance telephone, parking and travel. These costs are costs normally associated with the practice of law and are commonly referred to as "overhead" costs. They are not litigation costs and, therefore, will not be taxed against the defendant.

Last, the plaintiff seeks cost of $65.00 for service of process for serving a witness summons. That cost is properly taxable under subpart 11 of Local Rule 214(d) and, therefore, will be taxed against the defendant.

In summary, costs in the sum of $126.00 for filing and serving the complaint and summons, as well as costs of $65.00 for service of a subpoena on witnesses, and costs of $300.00 for copying shall be taxed. The motion to retax additional costs is denied.

### D. Defendant's Motion for Attorney Fees

The defendant has moved for an award of attorney fees and costs as the prevailing party in the Title VII litigation and for attorney fees and costs as sanctions under Fed. R.Civ.P. 11 for defending the breach of contract and interference with prospective business advantage claims on which it prevailed.

#### 1. Title VII Litigation

It is well established that a prevailing defendant may recover costs including attorney fees from an unsuccessful plaintiff in a Title VII action, however, "such a situation represents the exception rather than the rule." *Moore v. National Ass'n of Securities Dealers, Inc.,* 762 F.2d 1093, 1098 (D.C.Cir. 1985). "A district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case [only] upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

The Supreme Court further admonishes that "[i]n applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.... Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bring suit." *Id.*

Judged by these criteria, the Court declines to award defense counsel costs under Title VII as a prevailing party because it finds that the defendant has failed to carry its burden of showing that the plaintiff's Title VII claim was frivolous, unreasonable or without foundation. As earlier recited, the plaintiff, a female contended that she was the victim of discriminatory employment discharge because of her Hispanic origin and in

retaliation for protesting the discriminatory conditions of her employment.

Most, if not all of the plaintiff's charges of national origin discrimination centered on her relationship with the assistant director (AD) for PACT. The plaintiff contended that during a trip to El Salvador, the AD acted rudely to the El Salvadorians and following her return to Washington, she spoke disparagingly about them. At about the same time, the plaintiff believed that the AD thought of her as being in the same status as the El Salvadorians and began to harass her by making inordinate demands. She further felt that the AD believed the Ed Salvadorians to be business inferiors incapable of adequately performing in accordance with the demands of the project that was underway and that the AD felt the same way about her. Cody also voiced her belief that the AD discriminated against her because of her Latino heritage and her ability to get along with the El Salvadorians, by inundating her with demands that she was unable to meet and portraying her in a negative light to PACT's Director.

While the Court, at the conclusion of all the evidence, voiced his belief that this evidence was insufficient to prove that Cody's national origin was a motivating factor in the decision to terminate her employment, the Court, nevertheless, reserved judgment so as to permit the jury to make that determination. In response to special interrogatories, the jury specifically found that the plaintiff failed to carry her burden of proof on this issue. However, this does not mean that this claim was frivolous, unreasonable or without foundation. Granted the plaintiff's contentions were highly subjective, nevertheless, the Court does not consider them frivolous. Nor does the Court have any reason to believe that the plaintiff did not have reasonable grounds for bringing this claim in light of the fact that less than a year before she was fired, Cody received laudatory praise from this same AD concerning the work she was doing in El Salvador and consequently recommended her for a substantial raise.

In less than a year, the plaintiff went from a top performer to an unsatisfactory performer. It was not unreasonable that the plaintiff sought some reason for this demotion, other than her own failings. Under the circumstances, the filing of this claim cannot be found to have been unreasonable.

To access attorney fees against the plaintiff because she did not prevail in proving her charges would aid "in under cut[ting] the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." *Christiansburg,* 434 U.S. at 422, 98 S.Ct. at 701.

Accordingly, the defendant's motion for attorney fees and costs associated with defending the Title VII claim will be denied.[4]

### 2. Rule 11 Sanctions

The defendant also seeks attorney fees and costs under Rule 11 of the Federal Rules of Civil Procedure with respect to the plaintiff's intentional interference with perspective business relations claim on the grounds that this claim was frivolous, brought without factual or legal foundation and thereafter pursued in bad faith.

The plaintiff does not challenge the merits of these contention but, instead argues that the motion is procedurally deficient. The Court will defer ruling on this motion at this time and will schedule this motion for further oral hearing.

### E. Plaintiff's Attorney Fees

The plaintiff seeks attorney fees incurred in successfully litigating her Equal Pay Act claim against the defendant.

PACT opposes the motion. It contends that plaintiff's counsel has provided insufficient documentation and justification for the requested fee; that the request includes tasks that are noncompensable; that the amount sought is unreasonably high for the results achieved, and lastly, that any fee award should not include fees for work performed after she rejected a settlement offer that exceeded the back-pay verdict. The

---

4. The costs referred to in the judgment entered in favor of the defendant were the costs ordinarily awarded under Fed.R.Civ.P. 54(d) and Local Rule 214. The taxation of these costs is contingent upon compliance with the requirements of those rules.

plaintiff has not responded to the defendant's opposition.

 In order to arrive at a reasonable and proper amount for an attorney fee, we must initially determine the lodestar: "the number of hours reasonably expended [on successful litigation] multiplied by a reasonable hourly rate." *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (en banc). The reasonable hourly rate is that which is charged and paid in the community for similar services taking into consideration the skill, reputation and experience of counsel. *Id.* at 889, 892. Moreover, the burden is on the applicant "to provide specific evidence of the prevailing community rate for the type of work for which [s]he seeks an award." *National Ass'n of Concerned Veterans v. Sec'y of Defense,* 675 F.2d 1319, 1325 (D.C.Cir. 1982).

The plaintiff's application together with the affidavit of lead counsel, merely states she has been engaged in the practice of law for 15 years, and that the itemized list of services rendered represents fees and costs attributed to the successful prosecution of the Equal Pay Act claim.

This is wholly inadequate to carry the plaintiff's burden under the *Concerned Veterans* standard. The affiant does not spell out the skill, reputation and experience of counsel, nor is the application accompanied by any affidavits or other evidence of the prevailing community rate for similar services at the time they were performed, nor does the itemization itself detail the work performed so as to enable *the Court* to determine just what work and effort went into the preparation and presentation of the various claims presented.

The Court realizes that in some instances evidence in support of the various counts may have a common nuclear of operative facts making it difficult to attribute certain services to specific counts. Nevertheless, it is the Court's responsibility in the exercise of its discretion to determine what percentage of the fee for claims supported by common facts is to be attributed to the claim on which she prevailed. *Goos v. National Ass'n of Realtors,* 68 F.3d 1380, 1388 (D.C.Cir.1995).

Accordingly, the plaintiff's application for attorney fees is denied without prejudice to resubmit with appropriate documentation.