**Gwendolyne DEROUIN and Aurelia Luedke, Plaintiffs,**

v.

**LOUIS ALLIS DIVISION, a DIVISION OF LITTON INDUSTRIAL PRODUCTS, INC., a foreign corporation, Defendant.**

No. 81–C–270.

United States District Court, E.D. Wisconsin.

Sept. 6, 1984.

Thomas D. Jacobs, Gray & End, Milwaukee, Wis., for plaintiffs.

Dennis M. White, Madison, Wis., for defendant.

### DECISION AND ORDER

WARREN, District Judge.

Plaintiff employees have brought this action under the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, against the defendant employer. The plaintiffs allege that the defendant has discriminated upon the basis of sex in the payment of plaintiffs' salaries while they were supervisors at Louis Allis. Plaintiffs further claim that the pension benefits which they have accumulated are based upon unlawfully discriminatory salaries.

The parties have stipulated that the plaintiffs performed "equal work" within the meaning of the Equal Pay Act in comparison to male supervisors within their respective departments. The record further shows that the plaintiffs did not receive the same wages as male supervisors in their respective departments. Thus, there are no material facts in dispute, and both parties have moved for summary judgment. Defendant has moved for summary judgment as to the entire matter, and the plaintiffs have moved for summary judgment as to a finding of discrimination.

### I. BACKGROUND

Plaintiff Gwendolyn Derouin began work at the Milwaukee plant of Louis Allis as a technical clerk junior (essentially a secretarial position) on December 1, 1967. On February 17, 1975, she was promoted to dispatcher, and on April 12, 1976, she was promoted to the position of Supervisor II in Department 1280. She became the first female supervisor in the manufacturing operations of Louis Allis.

Plaintiff Aurelia Luedke was hired by Louis Allis as a secretary on February 6, 1962. She held the job of clerk senior from March 1, 1968, until November 14, 1978. On the latter date, she was promoted to the position of Supervisor III in Department 1492, and became the second female supervisor at Louis Allis. Plaintiff Luedke officially retired in September, 1981, and is currently on pension from Louis Allis.

Plaintiffs filed their complaint in this action on March 20, 1981, alleging Equal Pay Act violations. On April 13, 1981, plaintiff Derouin filed a charge with the Equal Employment Opportunity Commission (EEOC), and plaintiff Luedke did the same on April 15, 1981. The EEOC issued Right to Sue Notices to the plaintiffs on May 13, 1981, and April 17, 1981, respectively. On July 14, 1981, plaintiffs filed an amended complaint setting forth a Title VII cause of action in addition to their claims under the Equal Pay Act. Plaintiffs' theory of liability and operative facts are the same under both statutes.

### II. DEFENDANT'S SALARY POLICY: POLICY IR–2

The plaintiffs have alleged facts which defendant has not contested and which

demonstrate substantial disparities among the salaries paid to supervisors in the plaintiffs' respective departments. The salary disparities are a result of defendant's Policy IR–2, which states that a promotional salary increase should be within a specified percentage (10%–20%) of the employee's present salary. Policy IR–2 also requires that any "merit" increase in salary should range between 5% and 10% of that employee's current base salary. In other words, the salary and merit increases paid to a supervisor would be largely dependent upon that employee's salary in his previous position. There is, however, a specified minimum monthly salary, as well as a midpoint and maximum salary.

As a result of Policy IR–2, not all supervisors are paid alike: those who are promoted from lower paying positions will receive lower salaries and merit increases than those who are promoted from higher paying positions. Plaintiffs contend that this payment scheme perpetuates the low salaries paid for traditional "women's jobs", such as those from which they were promoted. Defendant contends that the plan is a *bona fide* merit plan which follows structured guidelines and which applies to men and women alike. The Court must decide whether the plan violates the Equal Pay Act and/or Title VII.

## III. STATUTE OF LIMITATIONS

Before considering the merits of plaintiffs' claims, the Court must address defendant's argument that plaintiffs' claims are barred by the applicable statutes of limitation. Under 29 U.S.C. § 255(a), a claim under the Equal Pay Act must be commenced within two years after the cause of action accrued, or within three years after the cause of action accrued if the alleged violation was willful. Pursuant to 42 U.S.C. § 2000e–5(e), the case must be commenced within 300 days of the cause of action if a charge is filed with a state agency.

Since the complaint in this case was filed on March 25, 1981, defendant contends that all of the plaintiffs' claims must be dismissed. Defendant states that the low salaries of which plaintiffs complain are based upon their entering salaries upon promotion in 1976 and 1978, both events having occurred more than two years before the complaint was filed.[1]

■ At the outset, the Court notes that the mere fact that plaintiffs continued to be employed by defendant is, without more, insufficient to sustain a cause of action for employment discrimination. *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). However, the cause of action is prolonged even where the alleged act of discrimination is beyond the statute of limitations if the initial act continues to manifest itself throughout the period of employment. *Jenkins v. Home Insurance Co.*, 635 F.2d 310 (4th Cir.1980). In particular, the act of paying a discriminatorily low wage occurs not only when the pay level is set, but continues as long as the discriminatory pay differential continues. *Id.; Satz v. ITT Financial Corp.*, 619 F.2d 738, 743 (8th Cir.1980).

■ From these cases, it follows that the plaintiffs' cause of action would continue as long as they were employed and/or receiving pension benefits based upon a salary that was set through discriminatory procedures. Since the differential in pay has been a continuing one, the respective statutes of limitation are no bar to plaintiffs' claims.

## IV. PLAINTIFFS' EQUAL PAY ACT AND TITLE VII CLAIMS

Section 2000e–2(a)(2) of Title 42, United States Code states:

---

1. For the purpose of this discussion, the Court will assume that the alleged violation was not willful and that the relevant period under the Title VII statute of limitations is two years. Plaintiffs claim that the violation was willful, and that the three-year period applies. The Court renders no decision as to this particular dispute, since it decides that the statute of limitations is no bar to recovery in either event.

(a) Employers. It shall be an unlawful employment practice for an employer— ... (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Specific prohibitions pertaining to payment differentials between employees of different sexes are covered in 29 U.S.C. § 206(d)(1):

(d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection reduce the wage rate of any employee.

As such, the Equal Pay Act precludes unequal pay for equal work, unless the payment falls under one of the four enumerated exceptions.

The burdens of proof in a case under Title VII are essentially the same as those in a case under the Equal Pay Act. The plaintiff has the burden of making a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450

U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Johnson v. Uncle Ben's*, 628 F.2d 419, 421 (5th Cir.1980). A prima facie case can be established by proof of "policies or practices which are neutral on their face and in intent but that nonetheless discriminate in effect against a particular group." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 349, 97 S.Ct. 1843, 1861, 52 L.Ed.2d 396 (1977). In this case, plaintiffs burden is to show that they were paid lower wages than male employees while performing substantially the same work.

Once the plaintiff has proved his prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the unequal treatment. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. One of the four exceptions specified under the Equal Pay Act would justify the disparate treatment. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). If the defendant meets his burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the defendant are not legitimate, but serve merely as a cover for a policy of discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

■ The plaintiffs have established their prima facie case. First, the parties have stipulated that supervisors in the respective departments do "equal work". Second, the plaintiffs have submitted unrebutted evidence that payment disparities exist between the supervisors within their respective departments. While certain male supervisors are paid lower salaries than each plaintiff, the facts as stated by the plaintiffs indicate that they are (or, in Ms. Luedke's case, were) at or near the bottom of their department's payment scales.[2]

In response, defendant states that Policy IR–2 is a *bona fide* merit system which qualifies as one of the four exceptions under 29 U.S.C. § 206(d)(1). Defendant also

---

**2.** The differences in salaries between the plaintiffs and male supervisors in their departments are included in Plaintiffs' Brief In Support of

Motion For Partial Summary Judgment, February 5, 1982, p. 4–6 and Appendices I and II.

contends that a merit plan can be lawful even though it is based upon a salary set years earlier which was unlawfully low.

Defendant's second contention goes against the cases previously cited which state that an unlawful act of discrimination, if perpetuated through further actions by the employer, gives rise to subsequent causes of action. *See Jenkins, supra,* and *Satz, supra.* Simply stated, if the plaintiffs' salaries upon promotion were established through a discriminatory policy, then the practice of basing merit increases upon that initial salary is also discriminatory.

The threshhold issue in this case, then, is whether Policy IR–2's requirement that salaries upon promotion be based on salaries before promotion is a sex-based factor which violates the Equal Pay Act and Title VII. As to this issue, the Court believes that defendant has met its burden of demonstrating some nondiscriminatory reason for its payment policy. Under the Equal Pay Act, disparities in payment are allowed where the differential is "based on any other factor other than sex." 29 U.S.C. § 206(d)(1). In the Stipulated Statement of Proposed Facts, proposed fact number 20 lists the following objectives sought through Policy IR–2:

"(1) budgetary control, by setting a minimum and maximum amount for a salary range;

(2) incentive for employee performance, by virtue of merit increases within the salary range;

(3) ability to compete with other employers for new hires, since the salary range permits competitive salaries for applicants with needed experience or skills rather than requiring that they start at the minimum rate; ability to pay competitive salaries for incumbent employees;

(4) ability to provide some distinctions in supervisory salaries between supervisors in different departments, to reflect differences in work performed and in working conditions and/or in skills acquired;

(5) equitable considerations between incumbent employees, in that:

a. the salary range permits supervisors with longer supervisory service to be rewarded for their service by possibly having higher salaries than newly promoted or newly hired supervisors;

b. supervisors are rewarded for the possession of greater technical skills than other supervisors have;

c. the salary range encourages non-supervisory production employees with high wage rates to apply for supervisory positions without taking pay cuts, rather than having to start at the minimum supervisory rate;

d. incentive for non-supervisory production employees with lower wage rates to apply for supervisory positions, by ensuring that they are paid at least the minimum rate; and

e. in the event that a supervisor is demoted from one supervisory job to another, the supervisor will not fall below the minimum salary rate."

Stipulated Statement of Proposed Facts, pages 7–8, February 3, 1982.

These objectives are sufficient, non-discriminatory reasons why defendant established Policy IR–2 and clearly explain the reasons for the income disparities which exist between supervisors. Therefore, the burden passes back to plaintiffs to prove that these reasons are not legitimate, and that they serve merely as a cover for sex-based discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

The plaintiffs have not met this burden of proof. The evidence of salary differentials they submitted proves their prima facie case, but they have not refuted defendant's proof that the reasons for the policy are legitimate. On the contrary, the evidence shows that Policy IR–2 operates as defendant says it does, and that it is applied to males and females equally without regard to sex. Although plaintiffs' salaries were lower than those of most other supervisors, plaintiff Derouin was not the lowest paid supervisor in her department, nor did she receive the lowest starting salary upon promotion. As for plaintiff Luedke, she was the lowest paid supervisor

in her department and received the lowest salary upon promotion. However, only four other supervisors worked in her department. The Court does not consider this to be a statistically significant sampling, and it certainly does not disprove defendant's contention that the salary differences are due to non-sex related factors.

At most, plaintiffs have shown that Policy IR–2 works to the disadvantage of those who are hired by Louis Allis at lower salaries and who are hampered by those initially low salaries throughout their careers with the Company. The evidence demonstrates, however, that the policy is applied equally to males and females, and that both have been adversely affected by it. Plaintiffs cannot meet their burden of proof through inconclusive or inapposite statistical information, nor through questionable intimations that only those doing "women's work" have suffered as a result of Policy IR–2.

The Court finds that Policy IR–2 is not a sex-based plan of discrimination and that plaintiffs do not have a claim under either the Equal Pay Act or Title VII.

## V. FAILURE TO FOLLOW PROPER PROCEDURE UNDER TITLE VII

Defendant alleges that the plaintiffs did not follow the proper procedure for bringing their Title VII claims, and as a result the Court does not have jurisdiction to decide these claims. As defendant acknowledges, this issue may have little import since there is no juridictional problem as to the Equal Pay Act claims. However, the Court believes that the issue should be addressed and that defendant's argument has merit.

As defendant correctly states, a plaintiff must obtain a proper Notice of Right to Sue from the EEOC before bringing a court action under Title VII. Before the Notice of Right to Sue may be issued, the EEOC must have jurisdiction by virtue of a properly filed charge. Pursuant to 42 U.S.C. § 2000e–5(d), a charge cannot properly be filed with the EEOC until the charge has been deferred to the appropriate state agency for at least 60 days:

(d) **Time for action under State or local law.** In the case of any charge filed by a member of the Commission alleging an unlawful employment practice occurring in a State or political subdivision of a State which has a State or local law prohibiting the practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days (provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective day of such State or local law), unless a shorter period is requested, to act under such State or local law to remedy the practice alleged.

In plaintiff Luedke's case, the EEOC received the charge on April 15, 1981, and issued a Notice of Right to Sue on the charge two days later. The appropriate Wisconsin state agency, the Department of Industry, Labor and Human Relations (DILHR), did not receive the charge until April 20, 1981, after the Notice of Right to Sue had been issued.

In plaintiff Derouin's case, the EEOC received the charge on April 7, 1981, and issued a Notice of Right to Sue 36 days later, on May 13, 1981. Apparently, the DILHR had received the charge in plaintiff Derouin's case before the EEOC issued the Notice of Right to Sue. However, 60 days had not elapsed since the charge was referred to the state agency.

Plaintiffs claim that they are not in violation of the statute because the Equal Rights Division of the DILHR typically waives jurisdiction over some cases, thereby giving the EEOC jurisdiction before 60 days have elapsed. Defendant contends that this "work-sharing agreement" was

expressly approved in *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

The procedure followed by the EEOC in the case of both plaintiffs is not the type approved by the Supreme Court in *Love v. Pullman.* In *Love,* the Court held that it was acceptable for the EEOC to orally refer a charge to the appropriate state agency, and wait until that agency had terminated its jurisdiction before the EEOC acted on the charge. In essence, the Court stated that a plaintiff need not file a written charge with both the EEOC and the state agency, and that it was proper for the EEOC to hold the written charge in abeyance until the state agency had terminated its proceedings. 404 U.S. at 525–26, 92 S.Ct. at 618.

In plaintiff Luedke's case, however, the EEOC issued a Notice of Right to Sue before the charge was even referred to the DILHR. There is no support for this procedure in the statute or in *Love.* In the case of plaintiff Derouin, the DILHR issued a finding on September 30, 1981, that there was no probable cause to believe that defendant had discriminated against plaintiff Derouin based upon her sex. Therefore, it is evident that the DILHR had not terminated its jurisdiction prior to the time the EEOC issued the Notice of Right to Sue in Derouin's case. Its jurisdiction may have been temporarily "waived", but it was not terminated as contemplated by the Supreme Court in *Love.*

In *Mahasco Corporation v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Supreme Court stated that the purpose of the sixty-day waiting period in § 2000e–5(d) was "... to give state agencies an opportunity to redress the evil at which the federal legislation was aimed, and to avoid federal intervention unless its need was demonstrated." *Id.* at 821, 100 S.Ct. at 2495. Furthermore, the Court declared that the EEOC was not at liberty to follow its interpretation of the statute rather than the plain meaning of "the language chosen by Congress." *Id.* at 825, 100 S.Ct. at 2497.

It is apparent from the language in *Mahasco* that legitimate reasons exist for requiring compliance with the statutory mandate. While the Court has not based its decision in this case upon the jurisdictional defect, it will not hesitate to do so in the future if the EEOC and the DILHR continue to follow their unlawful procedure.

For the reasons stated in part IV of this decision, defendant's motion for summary judgment is *Granted.*