**Virginia COX, Plaintiff,**

v.

**The HOME INSURANCE COMPANY, Defendant.**

Civ. A. No. CA 3–83–0911–G.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 27, 1985.

Law Offices of James C. Barber, Steven B. Thorpe, Dallas, Tex., for plaintiff.

Haynes & Boone, Hershell L. Barnes, Dallas, Tex., Kelley Drye & Warren, Martin D. Heybert, New York City, for defendant.

## MEMORANDUM ORDER

FISH, District Judge.

Defendant, The Home Insurance Company ("Home"), a property-casualty insurer, has filed a motion for summary judgment on the claims of plaintiff, Virginia Cox ("Cox"), for relief under the Equal Pay Act ("EPA") as amended, 29 U.S.C. §§ 201 *et seq.*, 206(d).[1] Upon consideration of the entire record, the court is of the opinion that the motion should be granted.

### I. *Legal Standard*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). *See, e.g., Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985); *Albertson v. T.J. Stevenson & Company, Inc.*, 749 F.2d 223, 228 (5th Cir.1984).

In considering a motion for summary judgment, the court must inspect the entire record and draw all reasonable inferences in favor of the party opposing the motion. *In re Municipal Bond Reporting Antitrust Litigation*, 672 F.2d 436, 440 (5th Cir.1982).

The movant has the burden of showing that no genuine issue of material fact exists, but the nonmovant must respond to an otherwise sufficient motion:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e). *See, e.g., United States v. An Article of Drug Consisting of 4,680 Pails, Each Pail Containing Sixty Packets*, 725 F.2d 976, 984–85 (5th Cir.1984); *Smith v. Flagship International*, 609 F.Supp. 58, 62 (N.D.Tex.1985).

### II. *The Equal Pay Act*

Cox asserts, and Home does not deny, that Cox was engaged in the production of goods for commerce, or that Home was an "enterprise," within the meaning of the EPA, 29 U.S.C. §§ 206(a), 203(s). *See*

---

1. No employer having employees subject to any provisions of this section [minimum wage provisions of the FLSA] shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

*Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 211–12, 79 S.Ct. 260, 263–64, 3 L.Ed.2d 243 (1959); *Mabee v. White Plains Publishing Co.,* 327 U.S. 178, 184, 66 S.Ct. 511, 514, 90 L.Ed. 607 (1946). The parties also agree that the applicable time frame is from April 20, 1981 to February 18, 1983, inclusive.

Generally, the EPA proscribes gender-based differentials in wages paid for the performance of equal work. *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir.1979), *aff'd,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981); *Vuyanich v. Republic National Bank of Dallas,* 505 F.Supp. 224, 281 (N.D.Tex.1980), *vacated on other grounds,* 723 F.2d 1195, *rehearing en banc denied,* 736 F.2d 160 (5th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 567, 83 L.Ed.2d 507 (1984).

Under the EPA, Cox carried the initial burden of proving that a wage differential existed and that the differential represented gender discrimination. *Pearce v. Wichita County, City of Wichita Falls, Texas, Hospital Board,* 590 F.2d 128, 133 (5th Cir.1979); *Strecker v. Grand Falls County Social Service Board,* 640 F.2d 96, 99–100 (8th Cir.1980). Once Cox established a prima facie case, the burden shifted to Home to show, by a preponderance of the evidence, that its conduct fell within one of the exceptions listed in the EPA. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195–97, 94 S.Ct. 2223, 2228–29, 41 L.Ed.2d 1 (1974); *Pearce,* 590 F.2d at 134; *Strecker,* 640 F.2d at 99 n. 1. These exceptions are affirmative defenses on which Home had the burden of proof. *Brennan,* 417 U.S. 188, 197, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Hodgson v. Corning Glass Works,* 474 F.2d 226, 231 (2d Cir. 1973), *aff'd sub nom. Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Shultz v. First Victoria National Bank,* 420 F.2d 648, 654, n. 8 (5th Cir.1969).

### III. *Evaluation*

#### A. *Elements of An EPA Claim*

To prove a prima facie case, Cox had to show that (1) an employer (2) paid different wages (3) to employees of opposite sex as (4) doing equal work on jobs the performance of which (5) required equal skill, effort, and responsibility (6) under similar working conditions. *Brennan,* 417 U.S. at 195, 94 S.Ct. at 2228; *Goodrich v. International Brotherhood of Electrical Workers, AFL–CIO,* 712 F.2d 1488, 1491 (D.C.Cir. 1983).

■ Cox did not have to demonstrate that the jobs performed were identical. She had only to show that the skills, effort, and responsibility required in performing the jobs were substantially equal. *Pearce,* 590 F.2d at 133; *Gunther,* 623 F.2d at 1309. The job content and actual job requirements, not the job title, classification, or description, are determinative. *E.E.O.C. v. Hernando Bank, Inc.,* 724 F.2d 1188, 1196 (5th Cir.1984); *Gunther,* 623 F.2d at 1309.

■ However, the statute applies to jobs requiring equal skills, not to employees who possess equal skills. *Waterman v. New York Telephone Co.,* 36 FEP Cases 41, 45 (S.D.N.Y.1984); *Hein v. Oregon College of Education,* 718 F.2d 910, 914 (9th Cir.1983). Merely pinpointing areas of overlap is insufficient to show substantial equality. "It is the overall job, not its individual segments, that must form the basis of comparison." *Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1194 (S.D.N.Y.1985) (quoting *Gunther,* 623 F.2d at 1309).

#### B. *Cox's Employment History at Home*

Home hired Cox on September 18, 1978, as a claims representative (casualty). Four months later, Home promoted her to Claims Service Representative II and gave her a ten percent raise to $13,208 a year. Cox received merit increases of nine percent and six percent, respectively, in December 1979 and January 1981. On April 20, 1981, Home promoted Cox to FCR II and granted her a twelve percent increase to $17,108, the maximum increase the internal salary guide allowed. On January 4,

1982, Cox received a twelve percent increase, bringing her salary to $19,136.

### C. Cox's Complaint

Cox asserts that as a Field Claims Representative ("FCR") for Home she was paid less than males performing substantially similar tasks. Specifically, she challenges the greater salaries received by the following co-employees. Mr. Jerry Robinson, a senior FCR (multi-line) was hired on November 16, 1981, at a salary of $23,296; Mr. Tommy L. Smith was hired as an FCR III (APD) on October 5, 1981 at $22,516. On August 6, 1979, Home hired Mr. Jerry D. Sudderth as an FCR II. Mr. Sudderth started at $17,004, received a four percent increase in December 1979 and a seven percent increase on January 5, 1981, bringing his salary total to $18,928. Home hired Galen R. Shaffer on June 4, 1979, as a FCR II (multi-line). Mr. Shaffer's salary was at all times identical to that of Mr. Sudderth. Mr. John R. Preston, whom Cox replaced, received a starting salary of $17,004. On January 5, 1981, Mr. Preston received an eleven percent merit increase, raising his salary to $18,876.

Home subdivides its FCR jobs in two ways. First, each FCR works in a discrete area or areas, i.e., casualty, property, automobile property damage ("APD"), and workers-compensation. Multi-Line FCR's may work in any area. Second, each FCR is classified as an FCR I, II, III or Senior FCR, in ascending order, according to his or her experience, ability, and settlement authority in the particular area.

Cox asserts that, although the FCR jobs are discrete and require specialized knowledge, they are nevertheless substantially equal within the meaning of the EPA. For example, Cox, through her affidavit, compares the job of FCRs in the workers-compensation and casualty areas, claiming that each performs the following tasks:

(1) investigate claims involving bodily injury;

(2) evaluate the nature and extent of injury and the degree and duration of incapacity produced thereby;

(3) evaluate medical reports and communicate with doctors and other health care providers;

(4) investigate the circumstances of injury in light of applicable law for the purpose of establishing presence or absence of liability or defenses thereto;

(5) evaluate the monetary value of claims and negotiate settlements with claimants or their attorneys; and

(6) do routine paper work such as 10-day reports, 30-day reports, 90-day captions, committee reports, suggested reserve changes, and draft requests.

She further asserts that the classification of field representatives as I, II, III and senior is irrelevant to actual job duties and is determinative only of pay scale. Thus, she concludes, the differences in skill, effort, and responsibility, among the jobs are inconsequential. See 29 C.F.R. § 800.123 (determining equality of job content, in general).

### D. Home's Response

To establish nonliability for sex-based wage differentials, Home must prove by a preponderance of the evidence that such differentials were the result of different duties and responsibilities, education attainment, experience, seniority, merit, quantity or quality of production, or any factor other than gender. See Strecker, 640 F.2d at 100; Equal Employment Opportunity Commission v. Aetna Insurance Company, 616 F.2d 719, 726 n. 10 (4th Cir.1980); Horner v. Mary Institute, 613 F.2d 706, 714 (8th Cir.1980); Schulte v. Wilson Industries, Inc., 547 F.Supp. 324, 340 (S.D. Tex.1984).

In addition to indicating the differences in skill, responsibility, effort, education, and training among the targeted individuals used in the salary comparison, Home raises as an affirmative defense its Salary Administration and Policy Guide, which, it contends, produced wage disparities unrelated to gender. Under the Guide, every job at Home is assigned a salary grade with a salary range. The Guide requires any promotional increase to be within a

specified percentage of the employee's present salary and also limits merit pay increases. Additionally, the Guide provides a maximum and minimum monthly salary for each class of employees.

A former assistant secretary and claims manager of Home's Dallas office stated by affidavit that any salary discrepancies were based on legitimate business reasons such as the following:

1. To permit entry into a position at salaries that reflect an employee's prior experience, education, and skills;

2. To adjust starting salaries to meet competitive market rates;

3. To act as a budgetary control over employee salaries;

4. To reward employees for good performance; and

5. To adjust individual salaries to eliminate salary inequities, thus reducing employee turnover and job dissatisfaction.

Home asserts that the guide completely explains any wage differentials and that it is a bona fide job evaluation plan outside the purview of the EPA. *See Brennan,* 417 U.S. at 201, 94 S.Ct. at 2231.

### E. *Analysis*

 The court concludes that Home presented sufficient evidence to meet its burden of proving that any salary disparities were unrelated to gender. Home supported by competent summary judgment proof its contention that its salary guide produced salary disparities irrespective of gender. Disparate salaries were awarded to male FCR's, and Cox benefitted from the Guide, receiving several promotions and maximum or near-maximum wage raises. Compensation systems that determine salaries on the basis of job duties and responsibilities, educational attainment, and experience are permissible. *Strecker,* 640 F.2d at 100; *Equal Opportunity Employment Commission v. Aetna Insurance Co.,* 616 F.2d 719, 726, n. 10 (4th Cir.1980); *Horner,* 613 F.2d at 714. Salary differentials that result from applying such criteria do not violate the EPA. *Brennan,* 417 U.S. at 201, 94 S.Ct. at 2231; *Strecker,* 640 F.2d at

101.; *Derouin v. Louis Allis Division,* 618 F.Supp. 221, 224–25, 37 FEP Cases 941, 943–945 (E.D.Wisc.1984); *Vuyanich,* 505 F.Supp. at 284.

### IV. *Conclusion*

The court concludes that Home established its affirmative defense as a matter of law. It is thus unnecessary to determine the more difficult question of whether Cox established a prima facie claim for relief under the EPA, because Cox's response did not challenge, by competent summary judgment evidence, the *bona fides* of Home's salary guide. In other words, Cox offered no summary judgment proof that the Guide was not systematic and objective, or that in any way it was applied to discriminate between the sexes.

To avoid summary judgment on Home's affirmative defense, Cox had to produce summary judgment evidence showing an issue for trial that the salary guide, neutral on its face, did in fact discriminate between males and females, either in intent or effect. *See Derouin,* 37 FEP Cases at 944–45; *GATX Aircraft Corporation v. M/V Courtney Leigh,* 768 F.2d 711, 715 (5th Cir.1985). This she wholly failed to do.

Thus, the court concludes that even if Cox's evidence as to equal treatment raises an issue of fact, Home is entitled to summary judgment on the basis of its affirmative defense. Accordingly, Home's motion for summary judgment is GRANTED, and Cox's claims for relief are DENIED.

SO ORDERED.