# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1131 consolidated with 03-1484

DR. ULKU RAMELOW

VERSUS

## THE BOARD OF TRUSTEES OF THE UNIVERSITY OF LOUISIANA SYSTEM, D/B/A MCNEESE STATE UNIVERSITY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 98-6522
HONORABLE G. MICHAEL CANADAY, DISTRICT COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

### ULYSSES GENE THIBODEAUX
### CHIEF JUDGE
\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, C.J., John D. Saunders, and Arthur J. Planchard[*], Judges.

**REVERSED AND RENDERED.**

**John Michael Veron**
**Robert E. Landry**
**Scofield, Gerard, Veron, Singletary & Pohorelsky**
**P. O. Box 3028**
**Lake Charles, LA 70602-3028**
**Telephone: (337) 433-9436**
**COUNSEL FOR:**
    **Defendant/Appellant - State of Louisiana, Board of Trustees, McNeese State University**

**Charles Schrumpf**
**Schrumpf & Schrumpf**
**3801 Maplewood Drive**
**Sulphur, LA 70663**
**Telephone: (337) 625-9077**
**COUNSEL FOR:**
    **Plaintiff/Appellee - Dr. Ulku Ramelow**

---

[*]Honorable Arthur J. Planchard, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Elizabeth Brooks Hollins**
**Louisiana Department of Justice**
**901 Lakeshore Drive - Suite 820**
**Lake Charles, LA 70601**
**Telephone: (337) 491-2844**
**COUNSEL FOR:**
> **Defendant/Appellant - State of Louisiana, Board of Trustees, McNeese State University**

THIBODEAUX, Chief Judge.

The Board of Trustees of the University of Louisiana System, d/b/a McNeese State University (hereinafter "McNeese") appeals a judgment of $49,156.00 rendered pursuant to a jury verdict against it in a proceeding brought under the Equal Pay Act of 1963, 29 U.S.C. § 206 (hereinafter "EPA") by Dr. Ulku Ramelow, a tenured professor in McNeese's chemistry department. For the following reasons, we reverse the judgment of the trial court. Because Dr. Ramelow failed to demonstrate the factors necessary to prove a prima facie case under the EPA, the jury was manifestly erroneous.

I.

**ISSUES**

McNeese entreats us to consider:

(1)     whether the jury committed manifest error in finding that Dr. Ramelow met her burden of proving that McNeese violated the EPA;

(2)     whether the jury erred because Dr. Ramelow failed to demonstrate a valid male comparator as required by the EPA and, therefore, failed in proving that her unequal pay was gender-based;

(3)     whether the amount awarded by the jury is supported by the record if the jury's verdict is not manifestly erroneous; and,

(4)     whether proof of Dr. Ramelow's claims should be limited to consideration of solely annual performance ratings because of a purported judicial confession made during the opening statement of Dr. Ramelow's attorney.

1

## II.

## <u>FACTS</u>

Dr. Ramelow first arrived at McNeese in 1982 when her husband, Dr. Gerald Ramelow (Dr. G. Ramelow), was hired as an assistant professor of chemistry. She began working for the university as an adjunct professor. Her pay was based on the number of classes she taught. Her usual load was one or two classes in addition to a lab course. According to Dr. Ramelow, she earned $200.00 per month. In 1987, Dr. Ramelow was hired as an instructor, a non-tenured track position, with a one year renewable contract. As an instructor, her salary was not based on the number of courses she taught. Finally, in 1991 she was hired as an assistant professor on a tenure track. It was at that point that Dr. Ramelow became eligible for merit pay increases. By 1994, she was promoted to associate professor and became tenured. Two years later, Dr. Ramelow's request for a full professorship was denied. According to Dr. Ramelow, she was told that her request for promotion to full professorship was too early. Her request was again denied in 1999. Dr. Ramelow testified that she was denied because she did not participate in summer classes and meetings and she lacked congeniality with other faculty members. She explained that she was unable to participate in summer classes because of surgery she underwent at the end of the spring semester.

In 2002, after the retirement of Dr. Russell Ham, the department head, Dr. Ramelow was promoted to full professor. At the time of trial, her salary was $44,683.00. Dr. Ramelow testified that among the full professors in the college of science, both male and female, her salary was the lowest. With the exception of one associate professor, her salary was also the lowest in that group. With respect to experience teaching college level course, Dr. Ramelow presented evidence that she

2

has 37.25 years of experience, more than anyone else in the department of chemistry. These years include the time she taught in her home country, Turkey. She also testified that the average salary for associate professors at McNeese for the school year 2002-2003 was $48,039.00 and that full professors at McNeese for that year averaged $60,000.00. Dr. Ramelow testified that, with respect to other professors in the chemistry department, their jobs are identical.

Witnesses for McNeese explained that the differences in salary were due to the tenure track starting date differences, market value for a particular professor's specialty and merit pay raises which are percentages of salary given to professors based on an annual performance report (APR). McNeese insisted that Dr. Ramelow's low salary was not based on her gender, but based instead on her APR ranking. The jury found that McNeese failed to pay Dr. Ramelow "in accordance with the Equal Pay Act."

III.

**LAW AND DISCUSSION**

*Judicial Confession*

In his opening statement at the trial of this matter, counsel for Dr. Ramelow stated that her rights under the EPA were violated due to the manipulation of her APRs during her years of employment with McNeese. In brief to this court in connection with the present appeal, Dr. Ramelow argued that not only were her APRs manipulated but also certain "salary adjustments," not tied to merit, were used to keep her salary below that of her male counterparts. It is Dr. Ramelow's reference to "salary adjustments" to which McNeese objects.

Louisiana Civil Code Article 1853 states: "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full

3

proof against the party who made it." It may only be revoked on the ground of error of fact. *Id.* Furthermore, the statement made must be an express acknowledgment of an *adverse fact. Jones v. Gillen,* 564 So.2d 1274 (La.App. 5 Cir.), *writ denied,* 568 So.2d 1081 (La.1990). McNeese asserts that *C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 03-1003 (La. 12/3/03), 861 So.2d 156, supports its position that the remark made by Dr. Ramelow's counsel during his opening statement regarding manipulation of her APRs is a judicial confession that the APR is the only basis of her claim that McNeese violated the EPA. The effect of a judicial confession by a party or his attorney is to waive the presentation of any evidence as to the subject of the admission. La.Civ.Code art. 1853, cmt. (b); *Crawford v. Deshotels,* 359 So.2d 118 (La.1978). In *C. T. Traina, Inc.*, counsel for *Sunshine* confessed, in an exception of no cause of action, to the existence of an oral contract. The supreme court concluded that an amended answer, denying the oral contract, did not serve to revoke the prior judicial confession. However, in reaching the conclusion that the answer did not revoke the judicial confession, the court noted that the amended answer failed to assert that the original admission was done in error and it also pleaded, in the alternative, that an oral contract existed. Thus, in *C. T. Traina, Inc.*, the issue of whether an oral contract existed was withdrawn, and the introduction of evidence with respect to the oral contract's existence was not allowed. Moreover, the main issue in *C. T. Traina, Inc.* was wether a contract existed between the parties; thus, when Sunshine Plaza admitted the existence of the oral contract it stated a fact *adverse* to its position.

It is noteworthy in the present case that Dr. Ramelow's counsel made the alleged judicial confession in his opening statement.

4

Although the majority of the jurisprudence regarding the purpose of opening statements are discussed in the context of a criminal procedure, that jurisprudence is helpful in understanding the general purpose of opening statements within a civil trial. The purpose of an opening statement is to acquaint the jury with the case in order to prevent confusion, and to protect a litigant from being taken by surprise or prejudiced in the preparation of his defense. *State v. Allen*, 95-1754 (La. 9/5/96), 682 So.2d 713. In *Krepps v. Hindelang*, 97-980, p. 9 (La.App. 5 Cir. 4/15/98), 713 So.2d 519, 524, the court noted that for a statement to be considered a judicial confession there is an added jurisprudential requirement that "a party must have relied on the declaration to his detriment." We do not find that the remarks made by Dr. Ramelow's counsel during his opening statement constitute a judicial admission that Dr. Ramelow is contesting *only* the APRs with respect to her EPA claim. In her pleadings and through the witnesses at trial, there were other wage matters discussed as the bases for her EPA violation lawsuit, including salary adjustments that were made by McNeese. Further, there is no evidence that McNeese detrimentally relied on the assertions made by Dr. Ramelow's counsel in his opening statement. Thus, we do not find McNeese's argument, that a declaration by Dr. Ramelow's counsel during his opening statement regarding the basis of her claim is a judicial confession thus limiting evidence and argument to that declared basis, convincing.

### Equal Pay Act

The Equal Pay Act of 1963, 29 U.S.C. § 206 reads in pertinent part:

(d) Prohibition of sex discrimination.

(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed,

between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

The Supreme Court has stated that the EPA is remedial and should be broadly interpreted to fulfill the underlying purposes for which it was enacted, that employees doing equal work should be paid equally regardless of the sex of the employee. *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223 (1974).

To recover under the EPA, a plaintiff must prove that an employer is paying different wages to employees based on an employee's sex and that the work they do is equal. *Id.* By *equal*, the Act does not mean that the work must be identical, but only that the work be "substantially equal." *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir. 1979), *affirmed on other grounds,* 452 U.S. 161, 101 S.Ct. 2242 (1981). The question of whether the work done by the male and female employees is substantially equal is one of fact and reviewed by this court under the manifest error-clearly wrong standard. *Id.* The burden is first on the employee, Dr. Ramelow, to establish a prima facie case under the EPA. To do so, she must show that: (1) McNeese is subject to the EPA; (2) she performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and, (3) she was paid less than a man. *Jones v. Flagship Int'l*, 793 F.2d 714 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952 (1987). There is no question that McNeese is subject to the EPA and that Dr. Ramelow was paid less than

6

a man in her department. However, with respect to factor number two, the statute focuses not on whether the female and male employee possess equal skills to do the job, but whether the actual jobs done by the female and male employee for the employer require equal skills. *Cox v. Home Ins. Co.*, 637 F.Supp. 300 (N.D. Tex. 1985). Further, minor differences in jobs may be disregarded, but major differences in the jobs may not be disregarded. *Corning Glass Works*, 417 U.S. 188, 94 S.Ct. 2223. It is only when Dr. Ramelow makes out a prima facie case that the burden of production then shifts to the employer, McNeese, to show that the difference in salary is justified based on one of the Act's four exceptions. 29 U.S.C. § 206(d)(1). Whether Dr. Ramelow establishes a prima facie case by showing that her position and that of other males at her place of employment are "substantially equivalent" for EPA purposes, thereby shifting the burden to McNeese, is also a question of fact, subject to the manifest error-clearly wrong standard of review. *Corning Glass Works*, 417 U.S. 188, 94 S.Ct. 2223. *See also, Tomka v. Seiler Corp.,* 66 F.3d 1295, 1311 (2d Cir. 1995)("It is for the trier of fact to decide if [there] is a significant enough difference in responsibility to make the jobs unequal."). In a case involving the establishment of a prima facie case in a professional setting, the court in *Hein v. Oregon College of Education*, 718 F.2d 910, 916 (9th Cir. 1983) instructed:

> [T]he proper test . . . in a professional setting such as that of a college is whether the plaintiff is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and *similarly situated with respect to any other factors, such as seniority, that affect the wage scale.*

(Emphasis added).

Dr. Ramelow testified about female full professors in the College of Science at McNeese who earn a higher salary than she earns. However, among the department of chemistry professors, it appears that Dr. Ramelow chose a single male

7

comparator with respect to her job and salary—Dr. Mark Delaney (Dr. Delaney). Dr. Ramelow's husband, Gerald, is also a department of chemistry professor. However, Dr. Gerald Ramelow, was hired by McNeese in 1982 as an assistant professor of chemistry. Thus he is not similarly situated with Dr. Ramelow with respect to seniority and cannot satisfy factor number two with respect to Dr. Ramelow establishing a prima facie case.

It is apparent the jury concluded that the job Dr. Delaney performed for McNeese required skills equal to that of the job performed by Dr. Ramelow and that he was likewise similarly situated in all factors affecting the wage scale. Although Dr. Ramelow worked at McNeese as an adjunct professor and instructor for many years beginning in 1982, she was not hired as an assistant professor of chemistry on a tenure track until 1991. In 1994, she was promoted to associate professor and became tenured. In 2002, she became a full professor. On the other hand, Dr. Delaney was hired into a tenure track position, making him eligible for merit raises, four years prior to Dr. Ramelow. Also, Dr. Delaney became the assistant head of the department of chemistry. He maintained his assistant department head position for three to four years, thus increasing his base salary due to the additional administrative work requirements. At one point during his career, Dr. Delaney became the interim department head. In the assistant and interim department head positions, Dr. Delaney was responsible for the supervision of all of the adjunct professors, instructors and professors in the department of chemistry within the College of Science, in addition to his teaching and scholarly research work. As supervisor over the department's personnel, Dr. Delaney was required to get along well with his colleagues. Dr. Ham testified that Dr. Ramelow lacked congeniality with her fellow professors and had an explosive temper. A reading of Dr. Ramelow's testimony in the trial transcript of this

8

case supports Dr. Ham's description of Dr. Ramelow's personality. The court, and her own attorney, had to repeatedly remind Dr. Ramelow of the trial judge's authority in conducting the trial and to follow the rules of the court set out by the trial judge.

We find that Dr. Ramelow failed to prove that the job she performed for the university was substantially equal to the job performed by Dr. Delaney, her male comparator in her EPA claim. Her job did not require the same skills as the job Dr. Delaney performed for the university and he was not similarly situated with respect to seniority, factors she had to show to make out a prima facie case under the EPA. Consequently, we find that the jury was manifestly erroneous in determining that Dr. Ramelow sufficiently made out a prima facie case. As a result of our finding that Dr. Ramelow failed to make out a prima facie case of a violation of the EPA, the burden of production to show that one of the exceptions to a wage differential existed never shifted to McNeese. Therefore, our decision pretermits discussion of the remaining issues.

IV.

## CONCLUSION

For the above reasons, the judgment of the trial court in favor of plaintiff, Dr. Ulku Ramelow, is reversed. Costs of this appeal are assessed to the plaintiff, Dr. Ulku Ramelow.

**REVERSED AND RENDERED.**

9