Ray MARSHALL, etc., Plaintiffs,

v.

The MAGNAVOX COMPANY OF
TENNESSEE,. Defendant.

No. CIV–2–75–104.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Nov. 9, 1977.

Marvin Tincher, Regional Atty., Ralph D. York, Robert C. Haynes, Nashville, Tenn., for plaintiffs.

N. R. Coleman, Jr., Greeneville, Tenn., Anne Bishop and James Allen Smith, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

The plaintiff served and filed written objections to the proposed findings of fact and recommendation of October 3, 1977 of the magistrate herein. 28 U.S.C. § 636(b)(1). After considering each such objection de novo, *idem.*, the undersigned judge hereby ACCEPTS such findings and recommendations made by such magistrate in so far as they relate to the objections of the plaintiff. *Idem.*

The defendant served and filed written objections to such proposed findings of fact, to the extent that such did not include two findings proposed by it. After considering each of such objections de novo, *idem.*, the undersigned judge hereby MODIFIES such findings so as to include substantially, as further modified by the undersigned, such findings, *idem.*

Following all which, the Court makes the following

## FINDINGS OF FACT.

1. The defendant The Magnavox Company of Tennessee (Magnavox) is a Tennessee corporation with its principal office and place of business located on Snapps Ferry Road, Greeneville, Greene County, Tennessee.

2. At all times relevant to this proceeding, the defendant engaged in the manufacture of, among other things, radios and television sets, a substantial number of which are shipped, delivered, or sold in interstate commerce.

3. The defendant is an employer having employees subject to the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

4. (a) The defendant is an enterprise within the meaning of 29 U.S.C. §§ 203(r), (s).

(b) As such an enterprise, the defendant is and has been subject to the provisions of 29 U.S.C. § 206, which includes the equal-pay provisions.

5. The defendant's Greeneville, Tennessee operations are divided into a number of divisions; only activities in the radio-TV division and the maintenance division are relevant to this action.

6. Prior to the negotiation of the first collective bargaining agreement in 1954, the defendant's management established a job classification system in which all hourly-rated jobs were placed in a series of labor grades, ranging from labor grade 2 (the lowest-paying) through labor grade 10 (the highest-paying).

7. This proceeding involves employees employed in the radio-TV and maintenance divisions in labor grades 2 and 4. The specific job codes, which form the basis for the instant proceeding, include job code 2000, assembly operator, second class, labor grade 2 in the radio-TV division and job code 303, janitress-matron, labor grade 2, in the maintenance division of Magnavox. The labor grade 4 positions, with which each is being compared are, respectively, job code 4000, assembly operator, first class, radio-TV division, and job code 302, janitor, labor grade 4, maintenance division.

8. (a) In December, 1954, the International Union of Electrical, Radio and Machine Workers (Union) was certified by the National Labor Relations Board as the statutory collective bargaining agent for all hourly employees of Magnavox at its

Greeneville location. Effective May 1, 1955, a collective bargaining agreement, governing wages, hours, and working conditions of Magnavox wage-earners, was entered into by Magnavox and the Union. In this agreement, there was a differentiation in the definition of upgraded jobs for women and men. This agreement provided for a beginning wage-differential of 5-cents per hour and a maximum differential of 12-cents per hour between labor grades 2 and 4. Subsequent agreements of Magnavox and the Union continued the practice of compensating labor grade 4 employees at a slightly higher rate than labor grade 2 employees, so that, at all times material to the issues presented in this action, employees performing as assemblers first class were compensated at approximately 6-cents more per hour than employees working as assemblers second class.

(b) In these agreements, Magnavox was accorded the right to transfer its employees from any assembler first class task to any other assembler first class task.

9. The hourly-wage differential between labor grade 2 and labor grade 4 was eliminated on July 1, 1974, under the provisions of a new collective bargain agreement which raised all labor grade 2 employees to labor grade 4 for pay purposes.

10. As to the functions of assemblers first class and assemblers second class:

(a) The mental effort required of a second class assembler is comparable to that required of a first class assembler. Both first class assemblers and second class assemblers are unskilled laborers: neither job requires a great deal of thought.

(b) The environmental conditions in which a second class assembler works are comparable to those in which a first class assembler works.

(c) There are hundreds of separate and distinct assembly operations requiring varying degrees of effort performed within both first and second class assembly classifications, with each operator's performing a slightly different function. Because it was impractical to compensate each of the hundreds of different assembly operators at different rates, the defendant created broad groupings of assembly operations within the two job classifications of first and second class assemblers.

(d) The assembler operations can be arranged according to physical effort required, ranging from the heaviest position in the first class assembly classification to the lightest position in the second class assembly classification. In making the broad groupings of assembler operations for placement within the two classifications, the defendant drew a line between what should constitute first class assembly and what should constitute second class assembly. The defendant exercised its best business judgment in drawing this line, on the basis of the difference in physical effort required by the two classifications. Although the few operations immediately adjacent to the line which the defendant drew are similar, the majority of first class assembly operations clearly require substantially more physical effort than any second class assembly operation. The plaintiff did not show by a preponderance of the evidence that the job of assembler second class required effort equal to the job of assembler first class.

(e) Physical effort required by a position includes the comparison of such factors as the amount of weight lifted, the amount of weight pushed, the body movements (bending, stooping, and twisting) required, the weight of tools used, and the number of times the operation must be repeated in the course of a workday.

(f) No second class assembler position requires the repeated lifting of as much weight as first class assembler operations.

(g) The second class assemblers on the board and chassis lines use primarily counter-balanced tools in which the weight factor has been eliminated.

(h) The first class assemblers use primarily tools which are not counter-balanced and which are heavier than the tools used by second class assemblers.

(i) The speed of the chassis, board, and final lines varies according to the process being run.

(j) The speed of the line is not related to the work speed required of the operators performing functions on that line: if a line is moving at a faster rate, each operator on that line has fewer functions to perform.

(k) Assembly operations performed in the radio-TV division are performed in three areas: the sub-assembly area, the chassis assembly area, and the final assembly area.

(*l*) Assemblers working in the sub-assembly area are all labor grade 2, second class assemblers. The second class assemblers in the sub-assembly area perform brief, repetitive, light assembly functions which are not performed on a moving line. The work performed there involves small parts which are later assembled to TV sets on one of the other assembly lines. The work is performed manually and with machines which are used to stamp, cut, tie, or connect parts. The work is repetitive in nature during the workday. The defendant was justified in compensating these second class assemblers at a slightly lower rate than first class assemblers working in the chassis assembly area and the final assembly area because of the greater effort expended by the first class assemblers.

(m) Labor grade 4 assembly operators first class and labor grade 2 assembly operators second class, both, perform functions in the chassis assembly area. The chassis assembly area is comprised of two types of assembly lines: the chassis and the board lines. First class assemblers and second class assemblers work on both the chassis line and the board line performing brief, repetitive, short-cycle assembly functions on a moving line. The positions on the chassis line and the board line, which are occupied by first class assemblers, are the positions which generally require greater effort because of the necessity of workers' handling the completed chassis. The plaintiff has not shown that the second class assemblers, working the chassis assembly area, expended effort equal to that expended by the first class assemblers working in the chassis assembly area. The defendant was justified in compensating the first class assemblers at a slightly higher rate because of the greater effort required of them.

(n) The effort required of assemblers first class and assemblers second class varies from position-to-position according to Magnavox' current needs. When a change is effected in the speed of an assembly line, in a model being produced currently, and in inventory demands, or when employees are absent from the production lines, it is necessary that Magnavox reassign tasks to be performed by its assembly operators. Assemblers first class are moved frequently from one task to another within their classification and thus may be moved from a position requiring comparatively less strenuous effort than that required by other tasks performed by other assemblers first class and may be reassigned to a different assembler first class assignment requiring comparatively the most strenuous effort, such as, for example, lifting a completed television set 500 to 700 times daily.

(*o*) In the final assembly area, all employees performing assembly functions on the moving line are first class assemblers. These first class assemblers perform functions involving the assembly of the larger component parts, which have been assembled on the chassis and board lines, to the cabinet. These positions generally require a greater physical effort because they involve bending, twisting, or stooping. Labor grade 2 second class assemblers work also in the final assembly area in off-line positions performing work of the same type as that performed in the sub-assembly area. The plaintiff has not shown that second class assemblers working in the final assembly area expended effort equal to that expended by the first class assemblers working in the final assembly line. The defendant was justified in compensating its first class assemblers at a slightly higher rate because of the greater effort required of them.

11. As to the functions of janitress-matrons and janitors:

(a) In the defendant's maintenance division, the job of janitress-matron was as-

signed to labor grade 2 and the job of janitor was assigned to either labor grade 3 or labor grade 4 under the various collective bargaining agreements between Magnavox and the Union.

(b) As a result of being in a higher labor grade, employees working as janitors were paid an hourly rate higher than that paid employees working as janitress-matrons.

(c) Under the current collective bargaining agreement, which became effective July 1, 1974, labor grade 2 was eliminated, and the jobs of janitor and janitress-matron, both, were assigned to labor grade 4. The rates-of-pay applicable to each of these jobs were equalized.

(d) The job of janitress-matron involves the performance of light cleaning duties, primarily in the women's restrooms. The janitress-matron cleans sinks and mirrors and performs spot-sweeping and-mopping in the women's restrooms. The janitress-matron stocks the tissue and towels, which are delivered to her by the janitors. The janitress-matron empties the small trash containers from the stalls in the women's restrooms.

(e) The job of janitor requires the operation of heavier equipment and the lifting of heavier materials than the job of janitress-matron requires, so that the plaintiff has not shown that the job of janitress-matron requires equal effort as does the job of janitor.

The Court arrived also at the following

## CONCLUSIONS OF LAW.

A. This Court has jurisdiction of the parties and of the subject matter. 29 U.S.C. § 210(a).

B. Magnavox, having employees subject to the Equal Pay Act of 1963, 29 U.S.C. §§ 201, et seq., was precluded from discriminating within its establishment in which subject employees were employed between its employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which it pays to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (1) a seniority system, (2) a merit system, (3) a system which measures earnings by the quantity or quality of production, or (4) a differential based on any other factor than sex, provided that Magnavox, while paying a wage rate differential in violation of such act was not permitted, in order to comply with the law, to reduce the wage-rate of any of its employees.

■ C. The burden was on the plaintiff-Secretary to have shown herein that Magnavox pays different wages to employees of different sexes for equal work on jobs which require equal skill, effort and responsibility and which are performed under similar working conditions. *Corning Glass Company v. Brennan* (1974), 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1, 10[4].

D. "Equal work," in that context, *supra*, required that the plaintiff-Secretary show that the jobs involved, while perhaps not identical, were substantially equal. *Shultz v. Wheaton Glass Company*, CA3d (1970), 421 F.2d 259, 265[2], certiorari denied (1970), 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64.

■ E. If the plaintiff-Secretary carried his burden of showing that Magnavox pays workers of one sex more than workers of the opposite sex for equal work, then the burden shifted to Magnavox to have shown that the differential is justified under one of the aforementioned four exceptions in the Equal Pay Act of 1963. *Corning Glass Works v. Brennan, supra,* 417 U.S. at 196, 94 S.Ct. at 2229, 41 L.Ed.2d at 11[5].

F. (1) Even a clear violation of the provisions of 42 U.S.C. §§ 2000e, et seq., by Magnavox in the 1960s, by its hiring only females for some jobs and only males for other jobs does not bear upon the issue *sub judice,* whether Magnavox indulged the payment of unequal compensation for the doing of substantially equal jobs on the basis of the sex of the respective employees.

■ (2) The Equal Pay Act of 1963 did not prohibit Magnavox' hiring employees purely on the basis of sex.

■ G. " * * * [J]obs do not entail equal effort, even though they entail most of the same routine duties, if the more highly paid job involves additional tasks which (1) require extra effort, (2) consume a significant amount of the time of all those whose pay differentials are to be justified in terms of them, and (3) are of economic value commensurate with the pay differential. * * * Employers may not be permitted to frustrate the purposes of the [Equal Pay] Act by calling for extra effort only occasionally, or only from one or two male employees, or by paying males substantially more than females for the performance of tasks which command a low rate of pay when performed full time by other personnel in the same establishment. * * * " *Hodgson v. Brookhaven General Hospital,* CA5th (1970), 436 F.2d 719, 725[7].

■ H. " * * * In determining wage classifications, an employer cannot make jobs unequal by arbitrarily according greater weight to the physical effort required by a job than the weight or value accorded to skill, job responsibility and working conditions. * * * " *Hodgson v. Daisy Manufacturing Company,* D.C.Ark. (1970), 317 F.Supp. 538, 551[4], affirmed *per curiam,* CA8th (1971), 445 F.2d 823.

■ The plaintiff-Secretary showed that females working as assemblers second class and as janitress-matrons for Magnavox in its Greeneville plant performed work which required equal skill; *i. e.,* Magnavox' assemblers first class, assemblers second class, janitors, and janitress-matrons were deemed by it to be jobs for unskilled workers. But, he did not show preponderately that the jobs of assembler second class and janitress-matron required effort equal to that required of assemblers first class and janitors, respectively, both of which were compensated at a slightly higher rate-of-pay during the pertinent period. All four positions mentioned immediately above required substantially equal mental effort, but the physical effort required for the respective positions was substantially unequal.

As was the prevailing custom in industry in the late 1940s and early 1950s, Magnavox also assigned "heavier" jobs to men and "lighter" jobs to women and paid these women employees slightly less than they paid these men. This appears to have been done in good faith by Magnavox with no purpose of utilizing such "heavier-lighter" distinction as a ploy in order to rationalize the paying of males at a higher rate. The majority of Magnavox' assemblers first class and janitors did in reality expend more physical effort than that expended by assemblers second class and janitress-matrons, respectively.

Finally, it was demonstrated by the evidence that Magnavox attempted in good faith to comply with emerging legislation reflecting changed attitudes toward the role of females in the industrial life of this nation. In September, 1966 Magnavox hired females as assemblers first class, whereas theretofore it had hired women only as assemblers second class. Commencing in 1974 under its current collective bargaining agreement, it compensated those performing jobs as assemblers second class at the same rates as those performing jobs as assemblers first class and those performing jobs as janitress-matrons at the same rates as those performing the jobs of janitor. This is not self-contradictory: the 1960s development indicates that Magnavox adhered to a continuing concept that the tasks of assembler first class and assembler second class were unequal within the meaning of the Equal Pay Act of 1963, and the 1974 development indicates that Magnavox's belated decision to convert to the solid-state technique of electronics manufacturing virtually eliminated the weight-factor which had been determinative previously in its establishment of its rates of compensation.

It is the resulting decision of this Court that the plaintiff Secretary of Labor hereby is DENIED all relief. Rule 58(1), Federal Rules of Civil Procedure. Judgment will

thus enter in accordance with Rule 79(a), Federal Rules of Civil Procedure. *Idem.*