**Bernice P. GOODRICH, Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO.**

**No. 86–5060.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 27, 1987.

Decided April 3, 1987.

Richard J. Hirn, Washington, D.C., for appellant.

Terry R. Yellig, Washington, D.C., for appellee.

Before WALD, Chief Judge, STARR and DAVIS,* Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Appellant Bernice P. Goodrich has worked for the International Brotherhood of Electrical Workers (IBEW) for thirty-five years. During that time, she has performed well. Since 1981, however, Goodrich has been litigating a claim under the Equal Pay Act of 1963,[1] asserting that she

---

* Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a).

1. The Equal Pay Act amended § 6 of the Fair Labor Standards Act, to provide that:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such em-

is paid substantially less money for substantially the same work performed by several male employees of the IBEW in her department. When this case was last before us, we reversed the District Court's order granting summary judgment for the defendants, and remanded for a full trial on the merits. *Goodrich v. IBEW*, 712 F.2d 1488 (D.C.Cir.1983) (*Goodrich I*). At trial, the District Court wrestled with the complicated factual questions involved in determining whether two jobs are "substantially equal" and concluded that the jobs of Goodrich and her male colleagues were not. In the alternative, the District Court found merit in the IBEW's claim that the wage differential was justified by a bona fide "factor other than sex"; this latter justification qualifies as one of the Act's affirmative defenses, 29 U.S.C. § 206(d)(1)(iv). After a careful review of the record on appeal, we conclude that the District Court's factual findings with regard to the significant differences between the jobs performed by Goodrich and the five male employees she has chosen for comparison are not clearly erroneous. Thus we affirm the judgment of the District Court that no unlawful wage disparity exists, without reaching the bonafideness of the IBEW's affirmative defense.

## I. BACKGROUND

Appellant Goodrich began working for the IBEW as a clerk-typist in 1952. In 1961 she was promoted to the position of agreement analyst in the Agreement Approval Department. That department's role is to review collective bargaining agreements negotiated by various IBEW locals and submitted to the IBEW's International President for approval. During times relevant to this lawsuit, the Agreement Approval Department has been staffed with five male professional employees and one male director in addition to appellant Goodrich.[2] These five male employees are all IBEW members with varying degrees of local union experience and leadership and carry the title of "International Representative" or "Senior International Representative."

International Representative is a designation given by the IBEW to professional staff selected by the International President, on the basis of the recommendations of twelve IBEW vice-presidents, from among IBEW local members. There are seventy-two International Representatives assigned to the IBEW's headquarters in Washington, D.C. and approximately two hundred others assigned elsewhere. International Representatives share the same job title and compensation regardless of the particular department or operation they are assigned to. When they are hired, International Representatives are informed that they are at the disposal of the International President, and are subject to reassignment operationally and geographically at any time.

Goodrich has alleged that her work, which consists of reading the completed agreements and reviewing them for conformity with IBEW policies, is equal to that of the five male employees. Indeed, the parties have entered a stipulation that

ployees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage of any employee.
29 U.S.C. § 206(d)(1).

**2.** The following International Representatives have been assigned to the Agreement Approval Department during relevant periods:

| | |
|---|---|
| John Dalton | Feb. 1, 1974 to present |
| Robert Damiani | Feb. 14, 1977 to Aug. 19, 1980 |
| | Nov. 20, 1982 to present |
| Stan Hubbard | Nov. 1981 to present |
| William Shank | Nov. 1979 to present |
| Richard Willaert | Sept. 15, 1977 to present |

Final Pretrial Order, App. A, "Stipulation of Undisputed Relevant Facts" (Nov. 17, 1983) at ¶ 9.

the nature of the work performed by plaintiff Goodrich is "equal" within the meaning of the Equal Pay Act to the work performed by International Representatives of the IBEW at such times as such Representatives are assigned to and physically performing work in the Agreement Approval Department.

Stipulation ¶ 1, Record Excerpts (R.E.) at 29. Goodrich's salary, however, is and has always been substantially less than that of Senior International Representatives.[3]

In December 1981 Goodrich sued the IBEW claiming that this wage disparity violated the Equal Pay Act. In order to make a prima facie showing under the Act, Goodrich had to prove that the IBEW paid lower wages to her than to her male co-workers, "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). In response, the IBEW could either rebut her showing, or assert one of four affirmative defenses, *i.e.,* that the wage difference was justified by "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

The District Court granted summary judgment for the IBEW. *Goodrich v. IBEW,* 32 Fair Empl. Prac. Cas. (BNA) 936 (D.D.C.1982). Because of unresolved issues of fact, the court declined to decide whether Goodrich performed equal work, but instead concluded that a stipulation entered into by the parties proved the IBEW's affirmative defense that there was a sex-neutral reason for the pay differential, *i.e.,* union membership.[4] As an alternative basis for its decision, the District Court also found that the IBEW's membership rule served a valid business purpose. 32 Fair Empl. Prac. Cas. at 938.

On appeal, a panel of this court cautioned the District Court against reading too much into the stipulation about the sex-neutral application of the IBEW member-

---

**3.** Goodrich's annual salary during the periods relevant to her back pay claims was as follows:

| | |
|---|---|
| 1979 | $24,494.00 |
| 1980 | $26,795.00 |
| 1981 | $30,030.00 |
| 1982 | $31,783.00 |
| 1983 | $33,444.00 |

At the time of trial, her salary was $36,046.00. Final Pretrial Order, *supra,* at ¶ 12.

The annual salary of Senior International Representatives is set by the IBEW's quadrennial convention and incorporated in the IBEW International Constitution. Stipulation ¶ 4, R.E. at 30. During the relevant time periods that salary was:

| | |
|---|---|
| Jan. 1979 | $44,000.00 |
| Oct. 1982 | $54,000.00 |
| Oct. 1983 | $56,862.00 |

The salaries of the International Representatives not yet "Senior" were less than the salaries of Senior International Representatives, but generally higher than Goodrich's salary. Final Pretrial Order, *supra* at ¶¶ 13–17.

**4.** The IBEW had put forward as a sex-neutral justification for the wage disparity its so-called "IBEW membership rule":

[I]t is and at all relevant times has been the policy and practice of the defendant IBEW to require, as a condition for being hired as an International Representative of the IBEW, that a person be an active member of the IBEW and one of its local unions ("IBEW membership rule").... [A]s part of the IBEW membership rule, it is and at all relevant times has been the policy and practice of the IBEW a) to pay Senior International Representatives an annual compensation and benefits set out in the IBEW Constitution as established by the quadrennial International Convention, and b) to pay non-International Representatives who are not in the bargaining unit of Local 2, OPEIU annual compensation and benefits at levels below that of Senior International Representatives, established by the International President of the IBEW.

Stipulation ¶ 4, R.E. at 30.

The IBEW had argued that this rule insured that its International Representatives would have the special expertise required for the additional duties they must perform. Although the District Court had not found that the significance of such additional duties had been sufficiently established to grant summary judgment on the unequal work issue, it concluded that because Goodrich had conceded that "[t]he IBEW membership rule has been applied equally and without exception to male[s] and females," *Id.* at ¶ 5, she was "foreclose[d] ... from contending that the IBEW membership requirement constitutes sex-based wage discrimination." 32 Fair Empl. Prac. Cas. at 938.

ship rule.[5] The panel also ruled that since the facts concerning the International Representatives' alleged extra duties and special expertise that would be necessary to determine whether their jobs were equal to Goodrich's job had not been sufficiently established, the mere allegation that those same extra duties served the "valid business purposes" of the IBEW could not be relied on to prove that the wage differential was based on a bona fide factor other than sex. *Goodrich I,* 712 F.2d at 1493–95. We remanded the case to the District Court for further proceedings on the merits.

A bench trial followed, and two years later the District Court once again found for the IBEW. *Goodrich v. IBEW,* Civ. No. 81–3214 (D.D.C. Dec. 30, 1985) (Mem. Op.) [Available on WESTLAW, DCTU database]. This time, the court entered specific findings with respect to the inequality of the work performed by Goodrich and those she had chosen for comparison, and with respect to the gender-neutrality of the justification proffered for any wage differential that might exist. After describing some of the tasks and responsibilities of the five male International Representatives, the District Court found that

the evidence is clear and convincing that International Representatives are more accountable for assuring that the mission of the IBEW is met than the responsibilities of an agreement analyst. The additional duties of the International Representatives involve representing the IBEW in providing a full range of services to its current locals and in obtaining new members and locals in the electrical industry.

**5.** The court noted:
Fairly construed, the stipulation simply acknowledged that the IBEW has consistently adhered to the membership rule, that the rule is longstanding, and that it bars males who lack union membership, as it bars females who are not union members, from achieving International Representative status.
... Nor is a plaintiff barred from contesting the genuineness of the reasons an employer proffers for a rule (here, to provide compensation for additional duties and special expertise) because the rule itself does not invoke a

Although the additional duties, as plaintiff correctly contends, are not necessarily extensive, the quality of the duties may not be ignored. The extra tasks performed by the male employees, as evidenced by their testimony, may indeed consume only a minimal amount of time but they are not of peripheral importance. Indeed, these tasks are significant and essential to the operation and mission of the IBEW.

Mem. Op., at 17. The court also analyzed the IBEW's affirmative defense, and concluded that even if the jobs were found to be equal, the IBEW membership rule was a bona fide "factor other than sex" under the Act, thus absolving the IBEW of liability for the wage disparity.[6]

## II. Equal Pay for Equal Work

### A. *The Legal Standard*

The Equal Pay Act was enacted to remedy the "serious and endemic problem" of sex-based wage discrimination. *Corning Glass,* 417 U.S. at 195, 94 S.Ct. at 2228; S.Rep. No. 176, 88th Cong., 1st Sess., 1 (1963). It stands for the straightforward proposition that "employees doing equal work should be paid equal wages, regardless of sex." H.R.Rep. No. 309, 88th Cong., 1st Sess. 2 (1963), U.S.Code Cong. & Admin.News 1963, pp. 687, 688. The initial burden to prove wage disparity and job equality is on the plaintiff. *Corning Glass,* 417 U.S. at 195, 94 S.Ct. at 2228. Once a prima facie case has been made out, the defendant may rebut the showing of equality, or assert one of the Act's affirmative defenses. The burden is on the defendant to prove that unequal payments are made pursuant to some legitimate, non

sex criterion or because the plaintiff has not attempted to bring herself within the rule. *Goodrich I,* 712 F.2d at 1494.

**6.** The District Court rejected arguments that the IBEW membership rule was really just a pretext, covering up unlawful wage discrimination, or that it perpetuated the effects of past wage discrimination. Mem. Op., at 24–26. Throughout the trial the District Court apparently refused to consider whether the process by which International Representatives are selected itself discriminates against women. *See, e.g.,* Trial Transcript ("Tr.") at 38, 263–267.

**1524**

sex-based factor. *Id.* at 196, 94 S.Ct. at 2229; *Thompson v. Sawyer,* 678 F.2d 257, 271 (D.C.Cir.1982).

Equal work under the Act does not mean that the jobs being compared must be "identical," but they must be more than merely "comparable," *i.e.,* capable of being compared. The prevailing standard is one of "substantial equality." *Goodrich I,* 712 F.2d at 1492; *Thompson v. Sawyer,* 678 F.2d at 274. A determination of substantial equality involves an inquiry into whether the jobs are substantially related and substantially similar in skill, effort, responsibility and working conditions. *Goodrich I,* 712 F.2d at 1492. The inquiry focuses on the primary duties of each job, not those which are incidental or insubstantial. *Thompson v. Boyle,* 499 F.Supp. 1147, 1165 (D.D.C.1979), *aff'd in part, rev'd in part, Thompson v. Sawyer,* 678 F.2d 257 (D.C. Cir.1982).

Since the enactment of the Act, courts have had to grapple with a myriad of difficult job comparisons; in doing so, they have devised certain standards to guide the equality determination. It is now established in this circuit that the plaintiff need not compare herself to all similarly classified male employees, but may choose one or more among those allegedly doing substantially equal work.

> To prove a violation of the Equal Pay Act, plaintiffs need only show their jobs were equal to the jobs of *some bookbinders,* but treated unequally. Plaintiffs need not show that their jobs were substantially similar to all, or even most bookbinder jobs.

*Thompson v. Sawyer,* 678 F.2d at 275. Furthermore, in comparing two jobs, only the skills actually required by those jobs, not the abilities of the persons currently in those positions are relevant. *Hein v. Oregon College of Educ.,* 718 F.2d 910, 914 (9th Cir.1983). Finally, it is the job as a whole, not just selected aspects of it that must form the basis for comparison. *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir.1979), *aff'd,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).

Ordinarily, the extra duties used to distinguish two jobs may not be tasks that would typically be performed by other personnel at lower pay. *Marshall v. Magnavox Co.,* 494 F.Supp. 1, 6 (E.D.Tenn. 1977), *aff'd,* 627 F.2d 1089 (6th Cir.1980); *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1049 (5th Cir.1973), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973). Nor may the benefits to the employer of flexibility to assign personnel to these less demanding tasks justify a significant wage disparity:

> A 10% wage differential is not automatically justified by showing that some advantage exists to the employer because of a flexibility whose extent and economic value is neither measured nor determined and which is attained by the performance of work carrying a much lower rate of pay.

*Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 264 (3d Cir.), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). Finally, the flexibility to reassign some employees even to comparably more difficult tasks, if not actually used, may not justify a wage differential. *See Thompson v. Sawyer,* 678 F.2d at 276.

**B.  *The Equal Work Claim***

We review the trial court judge's factual findings in Equal Pay cases as in other cases, under a "clearly erroneous" standard. *Thompson v. Sawyer,* 678 F.2d at 274; *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 453 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *see also Hein v. Oregon College of Educ.,* 718 F.2d at 913. The requirement that factual findings be upheld unless clearly erroneous, Fed.R.Civ.P. 52(a), constrains our review of the evidence.

If the district court's account of the evidence is

> plausible in light of the record reviewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Under that taxing standard we cannot say that Judge Johnson erred in finding that Goodrich's job was not substantially equal to that of the five males for comparison.

Goodrich argues essentially that even if the jobs of most International Representatives are not substantially equal to hers, the five male International Representatives assigned to the Agreement Approval Department do substantially the same thing she does: analyze agreements. All six of them are assigned to work at the same place and under the same working conditions. They use the same skills and exert the same efforts (in fact, Goodrich argues plausibly that she has the greater experience and skill in analyzing agreements). Indeed, the parties have agreed that as long as Goodrich and the male International Representatives are assigned to and physically within the Agreement Approval Department, their jobs are equal within the meaning of the Equal Pay Act. Stipulation ¶ 1, R.E. at 29.

■ The IBEW asserted, and the District Court found, however, that Messrs. Dalton, Damiani, Shank, Willaert and Hubbard—the five International Representatives assigned to the Agreement Approval Department—have work responsibilities that extend beyond analyzing agreements.[7] Mem. Op., at 11–12. Goodrich has attempted to characterize these additional duties or responsibilities as trivial and unrelated to their special expertise gained through prior union membership; she describes them as the kinds of tasks ordinarily assigned to other personnel at lower pay, and thus not capable of supporting a substantial wage differential.[8] Judge Johnson found that the additional duties in question, although consuming little time, were "significant and essential to the operation and mission of the IBEW." Mem. Op., at 17. We do not find this conclusion to be erroneous as a matter of fact, and decline to hold as a matter of law that a non-profit group like the IBEW, engaged in serving its members by advocacy and political means, must justify its wage decisions solely on a profit-oriented standard. It should be sufficient to justify a disparity that the International Representatives be engaged in extra duties that call on their prior union experience and that the union deems significant to its ongoing mission.[9]

The record supports the trial court's findings that the five International Representatives carry out duties in furtherance of the IBEW's mission, not just by the particular tasks they perform at the union's annual conventions (*e.g.*, security details, credentials committee work, etc.) but by being visible and available to talk to member delegates about local and national union matters, elections, grievance procedures, and conditions in particular industries. On the basis of their past experience in union activities, the International Representatives serve basically as "resource persons," even when they do not make formal presentations or give speeches at these meetings.

7. The equal work stipulation, by its terms, does not foreclose consideration of work performed outside the Agreement Approval Department, *e.g.*, at IBEW conventions, in the field, or in other departments at the IBEW International headquarters:

    [T]he nature of the work performed by plaintiff Goodrich is "equal" within the meaning of the Equal Pay Act to the work performed by International Representatives of the IBEW at such times as such Representatives are assigned to and physically performing work in the Agreement Approval Department. Stipulation ¶ 1, R.E. at 29.

8. *See Marshall v. Magnavox Co.*, 494 F.Supp. at 6 (holding that for extra duties to make a job unequal, they must require extra effort, consume a significant amount of time of all those paid the higher wage on the basis of those extra duties, and be of economic value commensurate with the pay differential), *aff'd*, 627 F.2d 1089 (6th Cir.1980).

9. The District Court concluded

    consideration must be given to the fact that such additional duties are assigned at the discretion of the International President. These additional duties are not demanded to frustrate the [Equal Pay Act] by calling for extra duties only occasionally or from only one or two International Representatives but rather constitute the manner in which the IBEW has determined to best facilitate its mission.

    Mem. Op. at 17. We find nothing in the record to suggest otherwise.

The evidence shows that these five International Representatives have, at various times during their tenure and while on assignment to the Agreement Approval Department, attended IBEW conferences, participated in organizing activities, and taught workshops or seminars for other IBEW members.[10] The International Representative job appears to be a special one, and its duties are not confined to those of the particular division to which the Representative is temporarily assigned.

The record also supports the proposition that International Representatives generally, and these five in particular, are subject to reassignment and have in fact been reassigned outside the Agreement Approval Department to other duties within the IBEW. This flexibility seems to be characteristic of the International Representative position, because the people chosen for these jobs have the experience and background to fill a variety of IBEW positions. Tr. 211–215, 220–231.

International Representatives are paid a fixed salary, set by the IBEW's constitution, regardless of the work they actually perform. Stipulation ¶ 4, R.E. at 30. In return for that salary and title, they must perform any and all duties placed upon them by the International President. Tr. at 215. Those International Representa-

tives in the Agreement Approval Department are not paid for analyzing agreements per se. They are paid *to be* International Representatives and to do whatever the IBEW needs them to do. Goodrich, on the other hand, is paid solely to analyze agreements.[11] Her salary is set by comparison to those obtained by a bargaining unit representing certain IBEW employees, and is based on her duties, responsibilities, training, and experience. The salaries of the five male International Representatives currently assigned to the Agreement Approval Department are different because they are set by a different process, because different assumptions are made about the work they are expected to and in fact do, and because the IBEW constitution requires that no staff or supervisory personnel make more than Senior International Representatives. The difference is in no way due to their gender.

## C. *The IBEW's Affirmative Defense*

Although the District Court found that Goodrich had not demonstrated an Equal Pay Act violation because her job and those of the five male International Representatives were not equal, the court went on to validate the IBEW's affirmative defense under § 206(d)(1)(iv) that the requirements of its "membership rule" for the selection

**10.** At trial, testimony demonstrated that the five International Representatives had indeed been assigned on occasions to other departments, and to perform other duties away from IBEW headquarters. The following list is illustrative of the testimony introduced at trial:

Hubbard, Willaert, Dalton and Damiani have worked security details, helped with registration and attended seminars at IBEW conferences and conventions, and have been available to answer the questions of local delegates. Tr. 94–99, 109–113, 140–145, 158–162.

Hubbard also represented the IBEW International Office at an awards banquet put on by his local union. Tr. 100–101.

Shank and Damiani have made presentations to visiting IBEW representatives on the functions of the Agreement Approval Department. Tr. 127–128, 164–165.

Shank has also served as a resource to other IBEW departments on the basis of his prior experience working in those departments or with particular employers. Tr. 129–132.

Damiani has also been assigned to handbill on behalf of the IBEW during an organizing

campaign. He has worked in the Bylaws Department, the Agreement Approval Department, and the Organizing Department of the IBEW. He has participated in various organizing campaigns and has worked on the Grievance and Appeals Committee of the 1982 IBEW Convention. Tr. 158–168.

International Representatives are assigned to work at conferences and conventions as resource people on the basis of their prior experience, to make contact with local delegates about ongoing business of the Agreement Approval Department, or just simply to be present and represent the International Office. Tr. 211–215, 228–231.

**11.** The District Court found that "[p]laintiff is never assigned any responsibilities outside her department and is classified as an office employee." Mem. Op., at 11. There appears to be nothing in the record to suggest that Goodrich performed any additional duties commensurate with those of the five International Representatives chosen by her for comparison. *Cf. supra*, note 10.

of International Representatives constitute a bona fide "factor other than sex" justifying a pay disparity. Because we affirm the District Court's findings on the inequality of the work, we do not reach that question or the additional one, raised by Goodrich, whether the IBEW's process for selecting International Representatives is gender discriminatory, and therefore incapable of constituting a bona fide "factor other than sex" justifying unequal pay.

### III. CONCLUSION

Goodrich attempted to demonstrate that the IBEW treated her unfairly and unlawfully by compensating her at substantially lower levels than some of her male co-workers. She has not, however, succeeded in showing that the work she performs is substantially equal to that of the International Representatives. Without such a demonstration, the Equal Pay Act can have no application. Accordingly, the judgment of the District Court is

*Affirmed.*