977 F.2d 574
 59 Fair Empl.Prac.Cas. (BNA) 1632
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jane E. TORNOW, Plaintiff-Appellant,
v.
UNIVERSITY OF N.C., at Chapel Hill; Frank Fearrington;
Nancy Blackwood, Defendants-Appellees.
 No. 91-2748.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 5, 1992
Decided: September 25, 1992
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Sr., District Judge. (CA-90-510)
 ARGUED: Ernest Yarborough, Winnsboro, South Carolina, for Appellant.
 Thomas J. Ziko, Special Deputy Attorney General, North Carolina Department of Justice, Raleigh, North Carolina, for Appellees.
 ON BRIEF: Alan McSurely, Chapel Hill, North Carolina, for Appellant.
 Lacy H. Thornburg, Attorney General, North Carolina Department of Justice, Raleigh, North Carolina, for Appellees.
 M.D.N.C.
 Affirmed.
 Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Jane E. Tornow ("Tornow") appeals an order of the district court granting appellees' motion for summary judgment on appellant's claim for violation of her rights under the Equal Pay Act, 29 U.S.C. Sec. 206(d). Finding no error, we affirm.
 
 I.
 
 2
 This case involves alleged sex discrimination in the starting salaries paid Purchasing Agent II employees in the University of North Carolina at Chapel Hill's ("UNC-CH") Department of Purchasing. On October 9, 1990, appellant Tornow filed a complaint in the United States District Court for the Middle District of North Carolina in which she alleged that the appellees were paying her a lower wage than that paid male employees for equal work in violation of her rights under the Equal Pay Act, 29 U.S.C. Sec. 206(d). She alleged that the difference in the starting salaries between herself and two male Purchasing Agent II employees accounted for most of the later disparities in their wages and formed the basis of her complaint.
 
 
 3
 In October 1985, Ms. Tornow was employed as a Purchasing Agent II in the purchasing department at UNC-CH. The university's purchasing department is made up of two distinct purchasing sections: (1) the scientific purchasing section, and (2) the general purchasing section. Ms. Tornow was hired to work in the scientific purchasing section at a starting salary of $20,196.00.
 
 
 4
 In May 1988, the purchasing department hired two men, Mr. George Michael Tutor and Mr. Malcolm L. McMillan, Jr., to work as Purchasing Agents II in the scientific purchasing section. Each of these persons was hired at a starting salary of $28,236.00.
 
 
 5
 Ms. Tornow further alleged in her complaint that defendantappellee Nancy Blackwood, who was the Assistant Director of Scientific Purchasing and Department Office Manager, put into effect on July 20, 1987, a policy which revealed her discriminatory attitude and treatment of women. Specifically, Ms. Tornow alleged that Ms. Blackwood required all female employees within the purchasing department to clean the department's kitchen, while the male employees were required to buy the cleaning supplies for such cleaning in lieu of actually performing the cleaning. The female employees were not given the option of paying for supplies in lieu of cleaning. Ms. Tornow further alleged that Ms. Blackwood reviewed and approved the starting salaries for appellant, Mr. McMillan, and Mr. Tutor and that subjectivity and gender-based discrimination on the part of Ms. Blackwood entered into the salary setting process.
 
 
 6
 After discovery in the case was completed, the appellees moved for summary judgment pursuant to Fed. R. Civ. P. 56. The district court granted appellees' motion for summary judgment on the grounds that there was no genuine issue of material fact and that appellees were entitled to judgment as a matter of law. On December 16, 1991, Ms. Tornow filed a timely notice of appeal.
 
 II.
 
 7
 We note at the outset that this court must review a decision granting summary judgment de novo. See, e.g., Miller v. Federal Deposit Insurance Corp., 906 F.2d 972, 974 (4th Cir. 1990). Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper,
 
 
 8
 [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
 
 
 9
 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).
 
 
 10
 As explained by the Court in Celotex Corp. v. Catrett, 477 U.S. 317 (1986),
 
 
 11
 Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
 
 
 12
 Id. at 322.
 
 
 13
 The Equal Pay Act, 29 U.S.C. Sec. 206(d), proscribes gender-based pay discrimination among employees. The Act basically "stands for the straightforward proposition that 'employees doing equal work should be paid equal wages, regardless of sex.' " Goodrich v. International Brotherhood of Electrical Workers, 815 F.2d 1519, 1523 (D.C. Cir. 1987)(quoting H.R. Rep. No. 309, 88th Cong., 1st Sess. 2 (1963)). "The Act does not prohibit variations in wages; it prohibits discriminatory variations in wages." Hein v. Oregon College of Education, 718 F.2d 910, 916 (9th Cir. 1983).
 
 
 14
 To establish a prima facie violation of the Equal Pay Act, a female plaintiff "must demonstrate (1) that she is receiving lower wages than a male co-worker (2) for equal work requiring equal skill, effort, and responsibility." Keziah v. W.M. Brown and Son, Inc., 888 F.2d 322, 324 (4th Cir. 1989). Once a plaintiff has established a prima facie case, the burden shifts to the defendant to prove that the difference in salary is justified by one or more of the four statutory exemptions, i.e., (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex. 29 U.S.C. Sec. 206(d)(1); Equal Employment Opportunity Commission v. Aetna Insurance Co., 616 F.2d 719, 724 (4th Cir. 1980).
 
 
 15
 As did the district court below, this court will assume, without deciding, that appellant established a prima facie violation of the Equal Pay Act. This court must therefore determine whether appellees carried their burden of proving by a preponderance of the evidence that the wage differential resulted from one of the four above-stated statutory exceptions.
 
 
 16
 In the case at bar, appellees argued that the difference between the wages paid Ms. Tornow and any similarly situated male was based on legitimate factors other than sex, i.e., the fourth statutory exemption. This court in Equal Employment Opportunity Commission v. Aetna Insurance Co., 616 F.2d at 719, explained the fourth exception as follows:
 
 
 17
 Congress, therefore, intended that merit systems and experience, training or ability of an employee may justify salary differentials, provided they are not based on sex.
 
 
 18
 Id. at 725.
 
 
 19
 A review of the record in the case sub judice shows that UNC-CH maintained a bona-fide classification system in determining the starting salaries of new employees. Specifically, the salaries of UNC-CH employees are set in accordance with the guidelines contained in UNC-CH Staff Personnel Administrative Guide # 23-Pay Plan (the "Pay Plan"). The Pay Plan provides that new hires are paid at the "Hiring Rate." The Pay Plan further provides that an employee may be hired at a different salary in those cases where labor, market, or equal pay factors warrant an adjustment, or in those cases where the applicant has "Commensurate Qualifications."
 
 
 20
 The Pay Plan states that "Commensurate Qualifications" are
 
 
 21
 A person's qualifications (above the Minimum Recruitment Standards) which are directly relevant to the duties and responsibilities of the specific position involved. As a guide, one additional step in the salary range may be granted for each additional year of relevant education and experience above the Minimum Recruitment Standards.
 
 
 22
 See Page 47 of the Joint Appendix, paragraph 4(e).
 
 
 23
 Under the Pay Plan, all positions are assigned a pay grade. Within each pay grade, there are a number of salary "steps." When hiring a new employee, UNC-CH reviews his or her relevant education and experience above the minimum qualifications to determine the step at which that person will be paid.
 
 
 24
 As far as minimum qualifications, standards established by the Office of State Personnel of the State of North Carolina provide that the minimum qualifications for a Purchasing Agent II are graduation from a four-year college or university and two years of experience in large scale purchasing; or a high school diploma and five years of experience in large scale purchasing; or an equivalent combination of education and experience.
 
 
 25
 This court finds that the record in the present action reveals that UNC-CH's Pay Plan was applied in a gender-neutral manner in setting the starting salaries of appellant as well as Mr. McMillan and Mr. Tutor. All of the evidence indicates that the relevant educational and work experience of Ms. Tornow and her two male comparators was evaluated under the Pay Plan, and their salaries were determined accordingly.
 
 
 26
 Specifically, the record shows that when Ms. Tornow was hired in October of 1985, the UNC-CH personnel department reviewed her background and found that she had seven years and one month relevant work experience in the purchasing department at N.C. Memorial Hospital. Ms. Tornow did not have a college degree. Ms. Tornow therefore needed five years of relevant work experience to meet the minimum qualifications for a Purchasing Agent II position. The university gave her educational credit for a year and one-half of college course work. The additional three and one-half years of experience necessary to meet the five-year minimum experience requirement were deducted from her work experience. Under the Pay Plan, the remaining three years and seven months of Ms. Tornow's relevant work experience qualified her to be hired at a Step 3A salary of $20,196.00. On October 7, 1985, the personnel department reviewed their salary evaluation of $20,196.00 for Ms. Tornow with appellee Frank Fearrington, who was the Director of Purchasing, and Mr. Fearrington approved this offer.
 
 
 27
 In May of 1988, the purchasing department hired appellant's two male comparators, Mr. McMillan and Mr. Tutor, as Purchasing Agents II. Linda N. Lane and Kathy B. Dutton of the university's personnel department reviewed the educational and work experience of Mr. McMillan and Mr. Tutor and made the determination of the appropriate starting salaries for each person. On April 29, 1988, and May 2, 1988, the personnel department reviewed with Ms. Blackwood their salary evaluations for Mr. McMillan and Mr. Tutor, and Ms. Blackwood approved these offers.
 
 
 28
 The personnel department reviewed Mr. McMillan's background and found that he had one year and six months of sales and service of scientific products with Fisher Scientific Company; four years and three months experience as the science department chairman and instructor at a technical college; and three years as a part-time graduate teaching assistant in laboratory courses at UNC-Greensboro for which he was given one and one-half years credit in relevant experience.
 
 
 29
 Under the Pay Plan, Mr. McMillan was given credit for seven years and three months of related work experience. Mr. McMillan had a B.A. degree; therefore, he only needed two years of relevant work experience to meet the minimum qualifications for a Purchasing Agent II position. That left Mr. McMillan with five years and three months of relevant work experience above the minimum qualifications for the job. The personnel department gave him credit for two years related experience for his masters degree in biology. That gave Mr. McMillan a total of seven years and three months of relevant experience which qualified him for a Step 7D initial salary of $28,236.00.
 
 
 30
 The record further shows that the personnel department felt that in order to attract and retain Mr. McMillan, whom the department viewed as a very well-qualified individual, the university had to offer the best possible salary. The Above Step 1 Documentation prepared by the personnel department in setting Mr. McMillan's salary reflects that Mr. McMillan had been offered a higher paying job closer to his home. The department thus noted that it felt justified in offering Mr. McMillan a salary of $28,236.00, particularly in view of his educational and work background. See Page 325 of Joint Appendix.
 
 
 31
 Mr. Tutor was the second male Purchasing Agent II hired in May 1988 and the second person to whom appellant compared her salary. The personnel department reviewed Mr. Tutor's resume and determined that he had sixteen years and eight months of sales experience with Fisher Scientific Company; and six months experience in purchasing, inventory control, and warehousing with Electric Supply. Mr. Tutor's experience therefore totalled seventeen years and two months. Similarly to Ms. Tornow, Mr. Tutor did not have a degree from a four-year college, but he was given two years of credit for his associate degree in business management. The remaining three years necessary to meet the minimum requirement of five years of experience were deducted from his related work experience leaving him with fourteen years experience above the minimum qualifications for a Purchasing Agent II position.
 
 
 32
 Mr. Tutor's work experience qualified him for the maximum salary available; however, he was not hired at the maximum. Ms. Blackwood knew both Mr. McMillan and Mr. Tutor professionally and believed that Mr. McMillan knew more about scientific equipment than Mr. Tutor. She was therefore reluctant to hire Mr. Tutor at a salary higher than that offered to Mr. McMillan. The university thus hired Mr. Tutor at a Step 7D or $28,236.00 annual salary.
 
 
 33
 In addition to evaluating a person's educational and work experience, the record further reveals that the UNC-CH Personnel Office conducted routine equal pay comparisons between the salaries offered to Mr. McMillan and Mr. Tutor and those paid to the men and women already employed in the purchasing department. This comparison was undertaken to prevent salary inequities.
 
 
 34
 Ms. Tornow argues that Ms. Blackwood's discriminatory enforcement of "KP" duties in the department's break room is indicative of her discrimination against women and further supports appellant's claim for discrimination in the setting of starting salaries. Although this policy is suspect and was found by the University Staff Employee Grievance Committee to be gender discriminatory, such policy does not show that the setting of the initial starting salaries of appellant, Mr. McMillan, and Mr. Tutor by the university was discriminatory.
 
 
 35
 In sum, the record clearly shows that UNC-CH set the starting salaries of new employees in accordance with the guidelines contained in a bona-fide classification system. Such salaries were based on an individual's relevant educational and work experience as well as market and labor factors prevailing at the time of hiring. The record further shows that the university's Pay Plan was applied in the present action in a non-gender discriminatory manner. Although some subjectivity entered into the salary determinations, i.e., both Mr. McMillan and Mr. Tutor were paid the same starting salaries even though Mr. Tutor had more relevant work experience, as this court has previously held:
 
 
 36
 An element of subjectivity is essentially inevitable in employment decisions; provided that there are demonstrable reasons for the decision, unrelated to sex, subjectivity is permissible.
 
 
 37
 Equal Employment Opportunity Commission v. Aetna Insurance Co., 616 F.2d at 726.
 
 
 38
 This court further notes that both of appellant's male comparators were hired two and one-half years after appellant, yet there is no evidence in the record as to inflationary and market factors pertaining to the time span between the hiring of these persons. Certainly inflation would account for at least some of the difference in the starting salaries.
 
 
 39
 Finally, this court notes that the record reveals that serious management problems existed in the UNC-CH purchasing department, and such may have created personnel problems; however, a federal court is not the proper forum to deal with such issues, and such problems do not show that the starting salaries of the purchasing department's employees were determined in a gender discriminatory manner.
 
 III.
 
 40
 Having viewed the evidence in the light most favorable to Ms. Tornow, we find that the district court's grant of appellees' motion for summary judgment was correct. Accordingly, the judgment of the district court is hereby affirmed.
 
 AFFIRMED